# MEMORANDUM OF LAW

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

### Indict No. 14 Cr 034 (RMB)

---

### UNITED STATES OF AMERICA

- against -

### DINESH D'SOUZA,

**Defendant.**

---

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS
## PURSUANT TO Fed. R. Cr. P. 12(b)

**BRAFMAN & ASSOCIATES, P.C.**
*Attorneys for Defendant Dinesh D'Souza*
767 Third Avenue, 26th Floor
New York, New York 10017
212 750-7800

BENJAMIN BRAFMAN
MARK M. BAKER
ALEX SPIRO

## **Table of Contents**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Point I
In light of *McCutcheon v. Fed. Election Commission*, Because  2 U.S.C. §441(f)
Does Not Distinguish between Base and Aggregate Contribution Limits, it is
Unconstitutional on its Face as Violative of a Contributor's Right to Free Speech
under the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Point II
There Was Absent Fair Notice, in Violation of Due Process, that §437g(d)(1)(D)
Could Be the Predicate for a Criminal Prosecution Where Defendant's Alleged
Reimbursement of $20,000 Involved *Four* Persons, Amounting to a Mere Aggregate
of an Allowable $5,000 as to Each; at the Least, the Statute Is Either Void for
Vagueness or  the  Rule  of  Lenity Absolves Defendant of Any Criminal
Wrongdoing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.      Void For Vagueness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B.      Rule of Lenity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Point III
Because Count Two, Alleging a Violation of 18 U.S.C. §1001, Relies on Statements
that Were Literally True, even if Misleading, it Must be Dismissed Under Controlling
Case law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Point IV
Defendant Has Made a Credible Showing of Some Evidence of Different Treatment
of Other Individuals Similarly Situated Persons as to Warrant Discovery from the
Government In Furtherance of a Potential Motion to Dismiss the Indictment on the
Ground of Selective Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

A.      Applicable Principles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.      Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## <u>Table of Authorities</u>

### <u>Federal Cases</u>

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
   __ U.S. __, 131 S Ct 2806 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Arizona v. Inter Tribal Council of Arizona, Inc.,*
   133 S. Ct. 2247 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Arlington Heights v. Metropolitan Housing Development Corp.,*
   429 U.S. 252 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ashcroft v. American Civil Liberties Union,* 535 U.S. 564 (2002) . . . . . . . . . . . . . . . . . . . . . 2-3

*Ashcroft v. American Civil Liberties Union,* 542 U.S. 656 (2004) . . . . . . . . . . . . . . . . . . . . . 3

*Bell v. United States,* 349 U.S. 81 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Board of Trustees of State Univ. of N.Y. v. Fox,*
   492 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bolling v. Sharpe,* 347 U.S. 497 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Broadrick v. Oklahoma,* 413 U.S. 601 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bronston v. United States,* 409 U.S. 352 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Bryan v. United States,* 524 U.S. 184 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Buckley v. Valeo,* 424 U.S. 1 (1976) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7

*Cheek v. United States,* 498 U.S. 192 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Citizens United v. Federal Election Comm'n,* 558 U.S. 310,
   130 S.Ct. 876, 898 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . . 20

*Connally v. General Construction Co.,* 269 U.S. 385 (1926) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Crandon v. United States,* 494 U.S. 152 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Federal Election Commission v. Wisconsin Right to Life,*
  551 U.S. 449 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Federal Election Commission v. Massachusetts Citizens for Life, Inc.,*
  479 U.S. 238 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gomillion v. Lightfoot,* 364 U.S. 339 (1960) . . . . . . . . . . . . . . . . . . . . . . . 22

*Grayned v. City of Rockford,* 408 U.S. 104 (1972) . . . . . . . . . . . . . . . . . . 9, 10

*Hill v. Colorado,* 530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hughey v. United States,* 495 U.S. 411 (1990) . . . . . . . . . . . . . . . . . . . . . . 12

*Kolender v. Lawson,* 461 U.S. 352 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*LaTrieste Restaurant v. Village of Port Chester,* 188 F.3d 65 (2d Cir 1999) . . . . . . . . . . . 20, 22

*Liparota v. United States,* 471 U.S. 419 (1985) . . . . . . . . . . . . . . . . . . . . . . 12

*Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12 (2d Cir.1999) . . . . . . . . . . . . . . 20

*Los Angeles Police Dept. v. United Reporting Publishing Corp.,*
  528 U.S. 32 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lutwak v. United States,* 344 U.S. 604 (1953) . . . . . . . . . . . . . . . . . . . . . . 15

*Mariani v. United States,* 212 F.3d 761 (3d Cir 2000) . . . . . . . . . . . . . . . . . . . . 3, 4, 6

*McBoyle v. United States,* 283 U.S. 25 (1931) . . . . . . . . . . . . . . . . . . . . . . . 12

*McCutcheon v. Fed. Election Com'n,* 12-536, 2014 WL 1301866
  (April 2, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 5, 6, 7, 11

*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) . . . . . . . . . . . . . . . . . . 8

*Oyler v. Boles,* 368 U.S. 448 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972) . . . . . . . . . . . . . . . . . . . 9

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. ——,
  132 S.Ct. 2065 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ratzlaf v. United States*, 510 U.S. 135 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997) . . . . . . . . . . . . . . . . . . . . . . 10

*Rewis v. United States*, 401 U.S. 808 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sable Communications of California., Inc. v. FCC*,
    492 U.S. 115, 126 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Smith v. Goguen*, 415 U.S. 566 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Virginia v. Hicks*, 539 U.S. 113 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Village of Hoffman Estates v. Flipside*, 455 U.S. 489 (1982) . . . . . . . . . . . . . . . . . . . . . . . 9

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wayte v. United States*, 470 U.S. 598 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

*United States v. $35,520 U.S. Currency More or Less*,
    87 Cv. 6838 (CSH), 1990 WL 80054
    (SDNY June 1, 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Alameh*, 341 F.3d 167 (2d Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*United States v. Al Jibori*, 90 F.3d 22 (2d Cir 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Alvarez*, 132 S. Ct. 2537 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Armstrong*, 517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . . . . 1, 19, 20, 21, 24

*United States v. Bass*, 536 U.S. 862 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Bass*, 404 U.S. 336 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Batchelder*, 442 U.S. 114 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Berrios*, 501 F.2d 1207 (2d Cir.1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Danielczyk*, 788 F. Supp. 2d 472 (E.D. Va. 2011),
   *opinion clarified on denial of reconsideration,*
   791 F Supp 2d 513 (E.D. Va. 2011) *revd in part on other grounds,*
   683 F.3d 611 (4th Cir 2012); *United States v Hsu,* 643 F Supp 2d 574,
   576 (S.D.N.Y. 2009) (Marrero, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 6, 11

*United States v. Diogo,* 320 F.2d 898, 905 (2d Cir.1963) . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*United States v. Fares,* 978 F.2d 52, 60 (2d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*United States v. Lanier*, 520 U.S. 259, 266 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Lighte,* 782 F.2d 367 (2d Cir 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Lozano,* 511 F.2d 1 (7th Cir.), *cert. denied,*
   423 U.S. 850 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mandanici,* 729 F.2d 914 (2d Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mahaffy*, 285 Fed. Appx 797 (2d Cir 2008) . . . . . . . . . . . . . . . . . . . . 15

*United States v. O'Donnell,* 608 F.3d 546, 556 (9th Cir 2010) . . . . . . . . . . . . . . . . . . 3, 6

*United States v. Polouizzi,* 564 F3d 142, 158 (2d Cir 2009) . . . . . . . . . . . . . . . . . . . . 12

*United States v. Santos,* 553 U.S. 507 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952) . . . . . . . . . . . . . 12

*United States v. Vesaas,* 586 F.2d 101, 104 (8th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Whittemore,* 944 F.Supp.2d 1003 (D. Nev. 2013) . . . . . . . . . . . . . . . . 6, 11

*United States v. Williams,* 553 U.S. 285, 292 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 6,10, 11

## **United States Constitution**

First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-8, 10, 22

Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

## Federal Statutes

2 U.S.C. § 431(11) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2 U.S.C. § 437g(d)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 14, 15

2 U.S.C. § 441a(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2 U.S.C. § 441a(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2 U.S.C. §441f . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

18 U.S.C. §1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

18 U.S.C. §1546 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18 U.S.C. §1956(a)(1)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §2252(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

31 U.S.C. §5316(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## Federal Rules

Fed. R. Cr. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## State Statutes

West's Ann.Cal. Penal Code § 647(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## Miscellaneous

H. Packer, The Limits of the Criminal Sanction 95 (1968) . . . . . . . . . . . . . . . . . . . . . . . . 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Indict No. 14 Cr 034 (RMB)

---

UNITED STATES OF AMERICA

- against -

DINESH D'SOUZA,

Defendant.

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO Fed. R. Cr. P. 12(b)

### Preliminary Statement

This memorandum of law is respectfully submitted in support of a motion brought by Defendant Dinesh D'Souza, dated April 17, 2014, whereby, he seeks an order of this court, pursuant to Fed R. Cr. P. 12(b), dismissing the indictment herein on various grounds and granting such other and further relief as to the Court seems just and proper. Pursuant to *United States v. Armstrong*, 517 U.S. 456 (1996), Defendant further seeks discovery from the Government of certain enumerated materials in furtherance of his claim that this indictment was improperly motivated by selective prosecution.

### Statement of Facts

The facts of this case, insofar as relevant to this petition, are contained in the accompanying affidavit of Benjamin Brafman, Esq. ("affidavit"), duly sworn to on the 17th day of April, 2014, and the exhibits appended hereto, all of which are incorporated herein and made a part hereof.

Argument

## Point I

**In light of *McCutcheon v. Fed. Election Commission*, Because 2 U.S.C. §441(f) Does Not Distinguish between Base and Aggregate Contribution Limits, it is Unconstitutional on its Face as Violative of a Contributor's Right to Free Speech under the First Amendment**

In the area of political contributions there exists a heightened concern of constitutionally protected free speech, which involves an "exacting scrutiny." "Under exacting scrutiny, the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest." *McCutcheon v Fed. Election Com'n*, 12-536, 2014 WL 1301866 (April 2, 2014) (citing *Sable Communications of California., Inc. v. FCC,* 492 U.S. 115, 126 (1989)).

In general, "[l]aws that burden political speech are accordingly subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Arizona Free Enterprise. Club's Freedom Club PAC v Bennett*, _ U.S. _, 131 S Ct 2806, 2817 (2011) (quoting *Citizens United v. Federal Election Comm'n,* 558 U.S. 310, ——, 130 S.Ct. 876, 898 (2010)) (internal quotation marks omitted) and citing *Federal Election Commission v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238, 256 (1986) (internal quotation marks omitted). *See also United States v. Alvarez,* 132 S. Ct. 2537, 2543-44 (2012) ("[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. As a result, the Constitution "demands that content-based restrictions on speech be presumed invalid ... and that the Government bear the burden of showing their constitutionality" (quoting *Ashcroft v. American Civil*

*Liberties Union,* 535 U.S. 564, 573 (2002) (internal quotation marks omitted) and *Ashcroft v.*
*American Civil Liberties Union,* 542 U.S. 656, 660 (2004)).

Under 2 U.S.C. §441f, it is provided that "[n]o person shall make *a contribution* in
the name of another person or knowingly permit his name to be used to effect such a contribution,
and no person shall knowingly accept *a contribution* made by one person in the name of another
person" (emphasis added). In *Mariani v. United States,* 212 F.3d 761, 775 (3d Cir 2000) the Third
Circuit upheld the statute, in the face of a First Amendment challenge.[1] The Court, however,
singularly addressing that aspect of the statute which effectively required disclosure of all
contributors to a candidate, thereby precluding anonymous contributions, based its ruling on
constraint of the Supreme Court's holding in *Buckley v. Valeo,* 424 U.S. 1 (1976) (per curiam).

According to *Mariani*:

> *Buckley* carefully considered the danger posed by compelled disclosure. It held that
> the state interests promoted by the FECA's reporting and disclosure requirements
> justified the indirect burden imposed on First Amendment interests, and that the
> compelled disclosure requirements were constitutional in the absence of a
> "reasonable probability" that disclosures would subject their contributors to "threats,
> harassment, or reprisals." Id. at 74, 96 S.Ct. 612. Proscription of conduit
> contributions (with the concomitant requirement that the true source of contributions

---

[1] The statute has also been construed to "prohibit[], straw donor contributions, in which a
defendant solicits others to donate to a candidate for federal office in their own names and
furnishes the money for the gift either through an advance or a prearranged reimbursement."
*United States v. O'Donnell,* 608 F.3d 546, 556 (9th Cir 2010), a conclusion which we do not
challenge. *See also United States v Danielczyk,* 788 F. Supp. 2d 472 (E.D. Va. 2011) *op clarified
on denial of reconsideration,* 791 F Supp 2d 513 (E.D. Va. 2011) *revd in part on other grounds,*
683 F.3d 611 (4th Cir 2012); *United States v Hsu,* 643 F Supp 2d 574, 576 (S.D.N.Y. 2009)
(Marrero, J.).

be disclosed) would seem to be at the very core of the Court's analysis. *In light of Buckley, we reject Mariani's argument that §441f fails to advance a compelling state interest.*

*Mariani v. United States*, 212 F.3d at 775 (emphasis added). *See also United States v. Danielczyk*, *supra*, 788 F. Supp. 2d at 485 (upholding §441f in the face of a First Amendment challenge because, citing *Buckley*, "the Supreme Court has held that, to combat corruption and there appearance thereof, Congress *can* make campaign contributions exceeding certain limits *impermissible.*").

Just recently, however, in *McCutcheon v. Fed. Election Com'n*, *supra*, the Supreme Court severely undermined the impact of *Buckley*. Even more crucially for our purposes, *McCutcheon* drew a fine line in the sand with regard to the different sorts of contributions that the Federal Elections Campaign Act could constitutionally proscribe without running afoul of the exacting scrutiny demanded by the First Amendment. *See McCutcheon*, 2014 WL 1301866 at *10 ("Although *Buckley* provides some guidance, we think that its ultimate conclusion about the constitutionality of the aggregate limit in place under FECA does not control here. *Buckley* spent a total of three sentences analyzing that limit; in fact, the opinion pointed out that the constitutionality of the aggregate limit "ha[d] not been separately addressed at length by the parties.")

In *McCutcheon*, the court addressed a statute that "imposes two types of limits on campaign contributions. The first, called base limits, restricts how much money a donor may contribute to a particular candidate or committee. 2 U.S.C. §441a(a)(1). The second, called aggregate limits, restricts how much money a donor may contribute in total to all candidates or committees. § 441a(a)(3)." 2014 WL 1301866 at *6. Upholding the former while holding that the latter ran afoul of the First Amendment, the Court observed that

[t]his case does not involve any challenge to the base limits, which we have

previously upheld as serving the permissible objective of combatting corruption. The Government contends that the aggregate limits also serve that objective, by preventing circumvention of the base limits. We conclude, however, that the aggregate limits do little, if anything, to address that concern, while seriously restricting participation in the democratic process. The aggregate limits are therefore invalid under the First Amendment.

*Id.*, at \*6.

Because "[u]nder exacting scrutiny, the Government may regulate protected speech only if such regulation promotes a compelling interest and is the least restrictive means to further the articulated interest[,]" *id.* at \*8, the Court found that with regard to contributions having aggregate limits, even "*Buckley* acknowledged that aggregate limits at least diminish an individual's right of political association." *Id.* at \*13. According to the *McCutcheon* Court,

The line between *quid pro quo* corruption and general influence may seem vague at times, but the distinction must be respected in order to safeguard basic First Amendment rights. In addition, "[i]n drawing that line, the First Amendment requires us to err on the side of protecting political speech rather than suppressing it."

*Id., at \*16 (quoting Federal Election Commission v. Wisconsin Right to Life,* 551 U.S. 449, 457 (2007) (opinion of Roberts, C.J.)).

Based on *McCutcheon,* because "the First Amendment requires us to err on the side of protecting political speech rather than suppressing it[,]" 2 U.S.C. §441f can no longer stand, absent a congressional fix. The statute ambiguously bans "contributions" in the name of another, without distinguishing between base limit contributions to any one specific candidate, which properly protects against *quid pro quo* corruption, and those contributions which, in the aggregate, could be provided to many candidates, and which have now been held to fun afoul of free speech. As seen, however, such a differentiation is vital if a congressional enactment is to pass constitutional muster because "there is not the same risk of *quid pro quo* corruption or its appearance when money

flows through independent actors to a candidate, as when a donor contributes to a candidate directly." *McCutcheon* at *17.

Given the foregoing, and the fact that the statute cannot be read without possibly prohibiting protected free speech, §441f newly fails the Supreme Court's "First Amendment overbreadth doctrine." Under that crucible,

> a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs. On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional—particularly a law directed at conduct so antisocial that it has been made criminal—has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute's overbreadth be *substantial,* not only in an absolute sense, but also relative to the statute's plainly legitimate sweep. Invalidation for overbreadth is " ' "strong medicine" ' " that is not to be "casually employed."

*United States v. Williams,* 553 U.S. 285, 292 (2008) (emphasis in original) (citing *Virginia v. Hicks,* 539 U.S. 113, 119–120, (2003); *Board of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 485 (1989); *Broadrick v. Oklahoma,* 413 U.S. 601, 615; *Los Angeles Police Dept. v. United Reporting Publishing Corp.,* 528 U.S. 32, 39 (1999)).

Indeed, "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* But, as noted, we no longer know what 2 U.S.C. §441(f) covers. Hence, because it could likewise ban "pass through contributions," *United States v. Danielczyk,* 788 F. Supp. 2d 472, 479 (E.D. Vir. 2011), which may very well now amount to protected free speech under *McCutcheon,* it can no longer stand as constructed. This was obviously not a consideration in either *Mariani; O'Donnell; Danielczyk;* or even *United States v. Whittemore,* 944 F.Supp.2d 1003 (D. Nev. 2013),

all of which sustained the statute, pre-*McCutcheon*, absent consideration of the First Amendment challenges.

In short, although, if it were to be legislatively repaired, the statute might properly proscribe *base* limitations and thereby pass constitutional muster, as it currently reads, it also covers *aggregate* limits to contributions. But the Supreme Court has now determined that "the indiscriminate ban on all contributions above the aggregate limits is disproportionate to the Government's interest in prevention circumvention." *Id.* at *23. As *McCutcheon*, concluded, therefore, "the aggregate limits on contributions do not further the only governmental interest this Court accepted as legitimate in *Buckley*. They instead intrude without justification on a citizen's ability to exercise 'the most fundamental First Amendment activities.' " *Id.*, at *27 (quoting *Buckley*, 424 U.S., at 14).

In sum, as presently constructed, §441f does not specify which type of "contribution" is now proscribed, one of which would be constitutional and the other of which would not, it can no longer stand until it is legislatively repaired. Accordingly, because the statute is constitutionally infirm, this indictment, which relies on the statute's legitimacy for its own vitality, must be dismissed.

<u>Point II</u>

**There Was Absent Fair Notice, in Violation of Due Process, that §437g(d)(1)(D) Could Be the Predicate for a Criminal Prosecution Where Defendant's Alleged Reimbursement of $20,000 Involved *Four* Persons, Amounting to a Mere Aggregate of an Allowable $5,000 as to Each; at the Least, the Statute Is Either Void for Vagueness or the Rule of Lenity Absolves Defendant of Any Criminal Wrongdoing**

As 2 U.S.C. §437g(d)(1)(D) reads, it criminalizes an otherwise non-criminal violation of 2 U.S.C. §441(f) where the aggregate amount exceeds $10,000. But the latter section specifically addresses, *inter alia*, making a "contribution in the name of another person," or "knowingly accepting a contribution made by *one person* in the name of another person" (emphasis added).[2] Based on this construction, the penalty contained in §437g(d)(1)(D), as implicating the First Amendment, is void for vagueness because a reasonable way of reading it is that, by necessarily incorporating the *actus reus* provision of §441f, the $10,000 threshold likewise applies to the same "one person."

---

[2] Although, to be sure, under 2 U.S.C. § 431(11) a "[p]erson" is defined as including "an individual, partnership, committee, association, corporation, labor organization, or any other organization or group of persons],]" under 2 U.S.C. §441f, the statute specifically speaks of "one person," thereby precluding application of this broader definition.  Indeed, "[a] well established canon of statutory interpretation succinctly captures the problem: '[I]t is a commonplace of statutory construction that the specific governs the general.' " *Arizona v Inter Tribal Council of Arizona, Inc.*, 133 S. Ct. 2247, 2266 (2013) (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. ——, ——, 132 S.Ct. 2065, 2071, (2012) (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992); second alteration in original)".

On such an analysis, no criminal penalties can attach, where, as here, *four* people were each reimbursed for such contributions, with the result that only $5,000 -- *viz.*, the lawful threshold as to any one contributor -- was reimbursed to each individual "one person." Accordingly, Defendant was never placed on adequate notice that criminality would attach if $10,000 were exceeded in the aggregate as to all four. At the least, the rule of lenity should preclude Defendant from being prosecuted under this section, given his alleged conduct.

A.    **Void For Vagueness**

As explained in *Kolender v. Lawson*, 461 U.S. 352 (1983)

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine "is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." Where the legislature fails to provide such minimal guidelines, a criminal statute may permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections."

461 U.S. at 357-58 (citing *Village of Hoffman Estates v. Flipside,* 455 U.S. 489 (1982); *Smith v. Goguen,* 415 U.S. 566 (1974); *Grayned v. City of Rockford,* 408 U.S. 104 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156 (1972); and *Connally v. General Construction Co.,* 269 U.S. 385 (1926)).

In *Kolender*, the Supreme Court upheld the district court and the Ninth Circuit Court of Appeals which had ruled that a California statute, West's Ann.Cal. Penal Code § 647(e) which required a person who loitered or wandered on the streets to provide a "credible and reliable" identification, and to account for their presence when requested by a police officer, did not satisfy

this standard. In the Court's view, the statute was unconstitutionally vague on its face, in violation of the Due Process Clause of the Fourteenth Amendment, because it failed to give fair notice as to what was precisely contemplated by the requirement that a suspect provide a "credible and reliable" identification. Consequently, because the statute gave "virtually complete discretion" to agents of law enforcement as to who was in violation, it could not withstand constitutional scrutiny.

Indeed, the Court's "concern" over the enforcement of that statute was based upon the "potential for arbitrarily suppressing First Amendment liberties ...." *Id.,* at 91, 86 S.Ct., at 213. In addition, § 647(e) implicates consideration of the constitutional right to freedom of movement." 461 U.S. at 358. In this regard, the Court explained that the

> [v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.

*United States v. Williams*, 553 U.S. at 303 (citing *Hill v. Colorado,* 530 U.S. 703, 732 (2000) and *Grayned v. City of Rockford, supra.*

Moreover, "[a]lthough ordinarily [a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," the Supreme Court has "relaxed that requirement in the First Amendment, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." 553 U.S. at 304 (quoting *Hoffman Estates, supra*, 455 U.S. at 494–495, nn. 6 and 7 (1982) and citing *Reno v. American Civil Liberties Union,* 521 U.S. 844, 870–874 (1997)) (internal quotation marks omitted). To be sure, however, the Court has advised that "'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'"

*Williams*, 553 U.S. at 304 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989).

Here, §441f, upon which the *mens rea* provision of §437g(d)(1)(D) depends for the governing *actus reus*, *see United States v. Danielczyk, supra*, 788 F. Supp.3d at 478, contemplates a reimbursed contribution to "another person" or the acceptance of a contribution "made by one person." It is simply impossible, therefore, to determine whether the latter, penalty section under §437g(d)(1)(D) prohibits *aggregate* contributions of $10,000 or more involving *more* than that one such conduit person, or whether the $10,000 threshold pertains to any one such person *alone*. Accordingly, because Defendant's alleged $20,000 reimbursement involved four separate individuals, he could not have knowingly and wilfully exceeded the $5,000 allowable threshold, as to any one individual.[3]

## B.   Rule of Lenity

Alternatively, the Rule of Lenity precludes Defendant's prosecution. The rule of lenity, described by the Supreme Court "as a sort of 'junior version of the vagueness doctrine,' " *United States v. Lanier*, 520 U.S. 259, 266 (1997) (quoting H. Packer, The Limits of the Criminal Sanction 95 [1968]), "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." 520 U.S. at 266. The rule is therefore well-embedded in federal

---

[3] If, despite the reasons stated in Point I, *ante*, §437g(d)(1)(D), along with §441f, would withstand analysis in light of *McCutcheon*, at the least, it now requires a heightened level of scrutiny. The *mens rea* state of wilfulness under §437g(d)(1)(D), therefore, should commensurately require a finding that Defendant was specifically aware that he would have been violating that particular provision, as determined in both *Ratzlaf v. United States*, 510 U.S. 135, 137(1994) and *Cheek v. United States*, 498 U.S. 192, 201 (1991) involving "highly technical statues." That is because, given the holding in *McCutcheon*, there is now likewise "presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan v United States*, 524 U.S. 184, 194 (1998). Because the contrary determinations in *Danielczyk and Whittemore* antedated *McCutcheon,* they should no longer be persuasive.

constitutional law.

Indeed, the Supreme Court made clear in 1931 that "a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). In *United States v. Bass*, 404 U.S. 336, 347-48 (1971), the Court explained that the principle articulated in *McBoyle*, and the interest in having legislatures, not courts, define criminal activity, form the basis of the longstanding rule that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *Bass*, 404 U.S. at 347 (quoting *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952) (internal quotation marks omitted)).

More recently, in *United States v. Santos*, 553 U.S. 507 (2008), it was recalled that "[u]nder a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *Id.* at 514. The Supreme Court has thus articulated and applied the rule of lenity time and again. *See, e.g., Hughey v. United States*, 495 U.S. 411, 422 (1990); *Crandon v. United States*, 494 U.S. 152, 160 (1990); *Liparota v. United States*, 471 U.S. 419, 427 (1985); *Rewis v. United States*, 401 U.S. 808, 812 (1971). *See also United States v. Polouizzi*, 564 F3d 142, 158 (2d Cir 2009) ("Thus, absent evidence of a contrary congressional intent, or an indication that the statutory structure precluded such a result, the rule of lenity requires the conclusion that a person who receives multiple prohibited images in a single transaction can only be charged with a single violation of [18 U.S.C.] §2252(a)(2)).

Indeed, the Supreme Court has recognized that, along with the vagueness doctrine and the due process prohibition on applying a novel construction of a criminal statute to conduct not clearly within its scope, the rule of lenity is but one of "three related manifestations of the fair warning requirement." *Lanier*, 520 U.S. at 266. "In each of these guises, the touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.*

The Court's recent grappling with the rule in *United States v Santos, supra,* strongly influences dismissal of this indictment. There, the Court was called upon to settle the definition of the term "proceeds" in the money laundering statute under 18 U.S.C. §1956(a)(1)(A)(i), which, it was noted, absent a congressional-supplied definition, could mean either "receipts" or "profits." Applying the rule of lenity, the plurality found in favor of the defendant:

> This venerable rule not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead. Because the "profits" definition of "proceeds" is always more defendant-friendly than the "receipts" definition, the rule of lenity dictates that it should be adopted.

553 U.S. at 514.[4]

Here, the same result should obtain. There is clear ambiguity as to whether, under the

---

[4] Agreeing in this regard with the Plurality opinion by Justice Scalia, Justice Stevens stated: "This conclusion dovetails with what common sense and the rule of lenity would require. Faced with both a lack of legislative history speaking to the definition of "proceeds" when operating a gambling business is the "specified unlawful activity" and my conviction that Congress could not have intended the perverse result that would obtain in this case under Justice ALITO's opinion, the rule of lenity may weigh in the determination. And in that respect the plurality's opinion is surely persuasive. 553 U.S. at 528 (Stevens, J. Concurring) (footnote omitted).

provisions of 2 U.S.C. §437g(d)(1)(D), Defendant correctly confined his reimbursement to each person to the maximum amount of $5,000, amounting in sum to the $20,000 for which he was charged. Indeed, a reasonable reading of that *mens rea* section, given that it incorporates the need to have knowingly and wilfully violated the *actus reus* provision of §441f, suggests that any actionable criminality arises only out of the reimbursement of the aggregate $10,000 to any *single person.*[5]

On such analysis, Defendant would clearly not have been notice that he was violating the statute by reimbursing $20,000 to the *four people*, each of whom, to the reasonable reader of the statute, would not have invited criminal sanctions if viewed with respect to their individual $5,000 contribution reimbursements. And so, because "[w]hen interpreting a criminal statute, [courts] do not play the part of a mindreader[,]" *United States v. Santos*, 553 U.S. at 515, "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Id.* (quoting *Bell v. United States,* 349 U.S. 81, 83 (1955)) (internal quotation marks omitted).

Because, to find Defendant culpable under this ambiguous provision, it is impossible to conclude that he could not have reasonably believed he was acting well under the criminal

---

[5] *Cf. United States v $35,520 U.S. Currency More or Less*, 87 Cv. 6838 (CSH), 1990 WL 80054 (SDNY June 1, 1990) (where two individuals in the same family traveling together each transport $10,000, albeit in a single container, the Government argued that one is required to report currency in excess of $10,000 even when one is transporting it for the benefit of another. Rejecting that claim as concerns the reporting requirements under 31 U.S.C. §5316(a)(1)(B), court Judge Haight stated that "[i]n respect of the $20,000 brought into the United States by Cohen and his wife, as a family they were entitled to bring in precisely that amount of currency without reporting it. The statute provides that each individual may transport $10,000 into the country. While each family is only required to fill out one customs form, that does not change the statutory allowance of $10,000 for every member of that family. Thus, Cohen was not statutorily required to report the funds which he and his wife brought into the country.") (footnote omitted).

threshold, this prosecution cannot be sustained. The indictment, therefore, insofar as accusing him of violating 2 U.S.C. §437g(d)(1)(D), must be dismissed.

### Point III

**Because Count Two, Alleging a Violation of 18 U.S.C. §1001, Relies on Statements that Were Literally True, even if Misleading, it Must be Dismissed Under Controlling Case law**

In *Bronston v United States*, 409 U.S. 352 (1973), addressing the question as to "whether a witness may be convicted of perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication[,]" the Supreme Court ruled that such a conviction could not lie. In *United States v. Mandanici,* 729 F.2d 914, 921 (2d Cir.1984), the Second Circuit recognized that the rule in *Bronston* was applicable to prosecutions involving violations of 18 U.S.C. §1001. *See also United States v. Mahaffy*, 285 Fed. Appx 797, 798 (2d Cir 2008); *United States v. Vesaas,* 586 F.2d 101, 104 (8th Cir.1978); *United States v. Lozano,* 511 F.2d 1, 5 (7th Cir.), *cert. denied,* 423 U.S. 850 (1975).

Indeed, ten years before *Bronston*, the Second Circuit had even determined that simply omitting information that was not necessarily called for in the question to which the allegedly false answer was responsive was not actionable under §1001. Thus, as far back as *United States v. Diogo,* 320 F.2d 898, 905 (2d Cir.1963), the Court of Appeals, addressing certain language in the Supreme Court's decision in *Lutwak v United States*, 344 U.S. 604 (1953), cautioned that

> [w]e do not read the quoted passage to suggest that a prosecution for false representations can be grounded upon the omission of an explanation, which omission only carries with it 'implications of a state of facts which were not * * * true.' To so hold would distort the language of the statute and assimilate the separate offense of concealment into the different one of false representations solely because of a similarity of prohibited objectives.

-15-

*United States v. Diogo*, 320 F2d 898, 905 (2d Cir 1963).

In *Diogo*, the defendants, who had entered into marriage solely for the sake of avoiding deportation, had been accused of falsely reporting to the Immigration authorities that they had been validly married, in violation of 18 U.S.C. §§1546 and 1001. The Government theorized that because the defendants had entered into sham marriages, they had falsely reported their marital status.

Noting that §1001 "encompasses within its proscription two distinct offenses, concealment of a material fact and false representation[,]" 320 F.2d at 902, the *Diogo* Court advised that "[w]hat must be proved to establish each offense, however, differs significantly. False representations, like common law perjury, require proof of actual falsity; concealment requires proof of wilful nondisclosure by means of a 'trick, scheme or device.'" *Id.* In alleging affirmative falsity, the Government theorized that "for the purposes of a criminal prosecution such as this one, if two persons, as part of an effort to circumvent the immigration laws, agree to a marriage 'only for the sake of representing it as such to the outside world and with the understanding that they will put an end to it as soon as it has served its purpose to deceive,' they were never married at all." *Id.* at 903.

The Court of appeals, however, recognized that "[w]hen he claimed to be the 'spouse of' or to be 'married to' an American citizen, each appellant purported to state the legal significance of a fact situation. Each representation was rendered ambiguous, however, by the quite understandable failure of appellants to specify the jurisdiction to which their legal conclusions referred." *Id.*, at 905. But, "[i]n construing these statements it is well established that we must look to the meaning intended by the appellants themselves, rather than to the interpretation of the statements which the immigration authorities did in fact make, or even to the interpretation which

the authorities might reasonably have made." *Id.* at 906. Thus, noting that "[u]nder the law of New York a defective marriage may be either void or voidable. Voidable marriages are valid for all purposes until annulled by a court of competent jurisdiction[,]" *id.*, at 905-06, the Court dismissed the indictment, given that it was only based on false representations. The Court held that "the Government has failed, as a matter of law, at the trial below, to sustain its burden of there proving that the marriages were void at the time appellant's representations concerning marital status were made." *Id.* at 909.

Diogo dictates the same result in this case. Defendant is likewise here charged with affirmative falsification, not concealment. *See* 320 F.2d at 910. Yet, as demonstrated in the accompanying affidavit and exhibits, the actual reports filed were certainly true as far as they went. The named persons did indeed contribute the amounts specified in their own name. That was all the forms required.

The fact that Defendant reimbursed them would only have been germane if there had been another box to check, asking the signatory whether the funds had either been lent by another, or reimbursed. The failure to disclose that information, in the absence of such a specific request, therefore, was certainly not false. It was also not an actionable concealment that is charged in the indictment, based on "wilful nondisclosure by means of a 'trick, scheme or device.'" 320 F.2d at 902. At best, because the actual sources of the funds were simply not called for, the questions answered can be viewed as "fundamentally ambiguous," *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir 1986), likewise precluding a valid prosecution.

This is only more so the case, given the ambiguity in §441f, as outlined in Point II, *ante,* and because Defendant had a reasonable belief that he had been acting within the parameters

-17-

of the law. Under all such premises, just as *Bronston* precluded as a basis for prosecution,

> [i]t is no answer to say that here the jury found that petitioner intended to mislead his examiner. A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether "he does not believe (his answer) to be true."

409 U.S. at 359. Rather,

> to hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners, and might well fear having that responsibility tested by a jury under the vague rubric of "intent to mislead" or "perjury by implication."

*Id.*

It follows that the charges in Count Two cannot stand, and should not even be considered by a jury. It should, therefore, be dismissed upon this motion.

-18-

**Point IV**

**Defendant Has Made a Credible Showing of Some Evidence Regarding the Different Treatment of Other Individuals Similarly Situated Persons so as to Warrant Discovery from the Government In Furtherance of a Potential Motion to Dismiss the Indictment on the Ground of Selective Prosecution**

A.      **Applicable Principles**

In *United States v. Armstrong*, 517 U.S. 456, 464 (1966), while emphasizing that a claim of selective prosecution "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution[,]." *id.*, at 463, the Supreme Court nevertheless accepted the premise that

> [o]f course, a prosecutor's discretion is "subject to constitutional constraints." One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification[.]" A defendant may demonstrate that the administration of a criminal law is "directed so exclusively against a particular class of persons ... with a mind so unequal and  oppressive" that the system of prosecution amounts to "a practical denial" of equal protection of the law.

517 U.S. at 464-65 (quoting *United States v. Batchelder,* 442 U.S. 114, 125 (1979); *Oyler v. Boles,* 368 U.S. 448, 456 (1962); and *Yick Wo v. Hopkins,* 118 U.S. 356, 373(1886), and citing *Bolling v. Sharpe,* 347 U.S. 497 (1954)).

"In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" 517 U.S. at 465 (quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15 (1926)). Because "[t]he requirements for a selective-prosecution claim draw on 'ordinary equal protection standards[,]'" 517 U.S. at 465 (quoting *Wayte v. United States,* 470 U.S. 598, 608 (1985)), "[t]he claimant must demonstrate that the federal prosecutorial policy "'had a discriminatory effect and that it was

-19-

motivated by a discriminatory purpose.'" *Id.* Thus, "[t]o establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." 517 U.S. at 465.

Otherwise stated,

> The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." "In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as ... intent to inhibit or punish the exercise of constitutional rights."

*LaTrieste Restaurant v. Village of Port Chester*, 188 F3d 65, 69 (2d Cir 1999) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985) and *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 15-17 (2d Cir.1999) (quotations and citations omitted)).

To be sure, as to the first element, it must be demonstrated that the enforcing authority had knowledge of others similarly situated since "[a]bsent such proof, LaTrieste would be hard-pressed to show that it was singled out for selective treatment." *LaTrieste Restaurant*, 188 F.3d at 69. Thus, in *LaTrieste* the Court of Appeals recalled that in *United States v. Fares,* 978 F.2d 52, 60 (2d Cir.1992) it had rejected a criminal selective prosecution claim because the defendant had failed to introduce "evidence as to large numbers of similarly situated persons known to the government."

With regard to the issue of when discovery may be demanded of the Government, the *Armstrong* Court noted that

> If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous

-20-

standard for discovery in aid of such a claim

517 U.S. at 468.

Accordingly, as concerns such "rigorous standard," the *Armstrong* Court recognized that "[t]he vast majority of the Courts of Appeals require the defendant to produce some evidence that similarly situated defendants of other races could have been prosecuted, but were not, and this requirement is consistent with our equal protection case law." *Id.*, at 469. Accepting that premise, which should not amount to an "insuperable task," *id.*, at 470, the Court concluded that "the required threshold -- a credible showing of different treatment of similarly situated persons -- adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Id.*.[6] *See also United States v Bass*, 536 U.S. 862, 863 (2002); *United States v. Alameh*, 341 F.3d 167, 174 (2d Cir 2003).

In this regard, however, "it may be that the amount and kind of evidence that suffices to meet the requirements of 'some evidence' justifying discovery is case-specific, and that courts must consider what evidence a defendant can obtain with due diligence in the absence of discovery." *Id.* In any event, "[s]uch purpose may, however, be demonstrated through circumstantial or statistical evidence." *Id.*, at 173 (citing *Arlington Heights v. Metropolitan Housing Devlopment Corp.*, 429 U.S. 252, 266 (1977) ("Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent

---

[6] The Second Circuit later recognized that *Armstrong* "seriously undermines our holding in *United States v. Berrios,* that "the decision to permit a hearing and, in anticipation thereof, to authorize a subpoena of evidence in the government's possession, lies largely in the trial judge's discretion." 501 F.2d 1207, 1212 (2d Cir.1974)." *United States v. Al Jibori*, 90 F.3d 22, 25 (2d Cir 1996).

as may be available."); *Gomillion v. Lightfoot,* 364 U.S. 339 (1960); and *Yick Wo v. Hopkins, supra.*

## B.   <u>Discussion</u>

As demonstrated in the accompanying affidavit, Defendant has made a credible showing, with more than just "some" evidence, that (1) compared with others similarly situated, he was selectively treated; and (2) that such selective treatment was more likely than not based on the impermissible consideration of punishing him for exercising his First Amendment right to criticize, as severely as he chose fit, the President, his administration, and his policies. Because such showing demonstrates further that this hasty indictment -- which unlike most other cases involving such relatively small amounts of money, even bypassed the Federal Election Commission's routine procedures -- certainly makes it most probable that Defendant was being "punish[ed] [for] the exercise of constitutional rights." *LaTrieste Restaurant v. Village of Port Chester*, *supra,* 188 F.3d at 69.

There is simply no question but that we have demonstrated that there is "evidence as to large numbers of similarly situated persons known to the government." *United States v. Fares,* 978 F.2d at 60. As shown in the affidavit, many individuals, having contributed through conduits, amounts far greater than the $10,000 in this "case-specific" matter, *United States v Alameh*, 341 F.3d at 174, saw their FEC "MUR"s routinely settled civilly, with nary a referral to the DOJ for any criminal prosecution. Moreover, even in those instances when cases were eventually referred, they first went through normal FEC processes. Only thereafter, if in fact referred to the DOJ at all (which certainly does not happen with any significant frequency), they did not result in prosecution until many months, and even years had passed, owing to lengthy criminal investigations.

Not so here. This case resulted in a criminal prosecution in one fell swoop. It

bypassed the FEC completely, and certainly did not result from any considered or protracted criminal inquiry on the part of the FBI. Rather, the timing demonstrates clearly that it resulted almost contemporaneously with administration officials' public utterances, including that of the President on his website, which noted their disdain for, and dissatisfaction with, Defendant's extraordinarily hostile political criticisms.

Indeed, the very fact that the FBI elected even to blatantly refuse the request of members of the Senate Judiciary Committee, charged with overseeing that agency's activities, certainly does not pass the smell test. Rather, it suggests that the investigators, rather than having to manufacture a valid jurisprudential rationale behind this hasty and politically-motivated prosecution, simply elected to remain silent.  The same can be said for its refusal to respond to Defendant's FOIL request.

Moreover, when the Government was consulted in furtherance of our seeking a deferred prosecution, it provided counsel with a number of cases where, it claimed, criminal prosecutions resulted. But, as counsel demonstrated, in each of those cases there was involved either a) clear evidence of corruption; b) the egregious breaching of the defendants' fiduciary responsibilities; c) prior convictions, or d) extraordinary amounts of money. Here, on the other hand, we have $5,000 contributions by four different people, amounting to $20,000, where Defendant allegedly violated §441(f), not out of any corrupt motive, but simply to protect the subject candidate, a personal friend, from political retribution should it have become known that, given his high anti-Obama profile, he had personally been involved. *Indeed, the subject campaign in this case did not even know that Defendant had been reimbursing the four named contributors.*

All things considered, Defendant has met "the required threshold." *United States v.*

-23-

*Armstrong,* 517 U.S. at 468. He has made a "credible showing of different treatment of similarly situated persons. " *Id.* And because this showing "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution[,]" it is respectfully submitted that discovery should be ordered in furtherance of his demonstrating the potential reality that this prosecution has deprived this controversial citizen of equal protection of the law.

### Conclusion

**For the Reasons Stated in Points I, II, and III the motion Should be Granted in all Respects and Counts One and Two of the Indictment Should Be Dismissed; Alternatively, for the Reasons Stated in Point IV, The Government Should be Directed to Provided the Defense With the Requested Discovery in Furtherance of a Possible Dismissal of the Indictment On the Ground of Selective Prosecution**

Dated:        New York, New York
              April 17, 2014

                              Respectfully submitted,

                              **BRAFMAN & ASSOCIATES, P.C.**
                              *Attorneys for Defendant Dinesh*
                              767 Third Avenue, 26th Floor
                              New York, New York 10017
                              212 750-7800

              By:        _____
                              BENJAMIN BRAFMAN
                              BB2285

MARK M. BAKER
ALEX SPIRO
              Of counsel

-24-