UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                    :

    -v.-                                    :
                                                          14 Cr. 034 (RMB)
DINESH D'SOUZA,                             :

        Defendant.                 :

- - - - - - - - - - - - - - - - - -X


**MOTIONS *IN LIMINE* OF THE UNITED STATES**


PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Carrie H. Cohen
Paul M. Krieger
Assistant United States Attorneys
    -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :

                                 04 Cr. 034 (RMB)

  - v. -                            :

DINESH D'SOUZA,                      :

               Defendant.       :

- - - - - - - - - - - - - - - - - - X

### THE GOVERNMENT'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS MOTIONS *IN LIMINE*

      The United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, Carrie H. Cohen and Paul M. Krieger, Assistant United States Attorneys, of counsel, respectfully moves this Court for the following rulings *in limine*:

      First, the Government respectfully requests that the Court preclude the defendant Dinesh D'Souza ("defendant" or "D'Souza") from arguing at trial (during jury addresses, by way of suggestions made in questions put to witnesses, or otherwise) or offering documentary or testimonial evidence at trial regarding: (a) certain allegedly benign but legally irrelevant motives for the defendant's conduct at issue in the case; and (b) the Government's alleged motives in charging the defendant for the crimes in the Indictment.

      Second, the Government respectfully requests that it be

1

permitted, pursuant to Rule 404(b) of the Federal Rules of Evidence, to offer evidence that D'Souza violated federal campaign finance laws in connection with his and his wife's $10,000 contribution to Wendy Long's campaign for the United States Senate (the "Long Campaign"). More specifically, the Government may seek to introduce evidence at trial that the defendant's wife was not aware of and did not authorize this contribution to the Long Campaign.  Evidence that D'Souza made this unauthorized contribution is admissible to prove his intent, knowledge, absence of mistake, and lack of accident in making the conduit campaign contributions specifically at issue in the Indictment.

Third, the Government respectfully requests that the Court permit the Government to introduce, under certain circumstances described herein, portions of an audio recording that an anticipated Government witness, Dr. Louis Joseph, made of an October 30, 2013 in-person conversation (the "October Conversation") with his wife, Denise Joseph, who also is an anticipated Government witness at trial.   The October Conversation concerned, among other things, statements the defendant made to Ms. Joseph about the instant case. While the Government currently does not intend to introduce any of the October Conversation in its case-in-chief, if the defendant cross-examines Ms. Joseph or Dr. Joseph about the recording or the

subject matter of the October Conversation, the Government intends to introduce portions of the recording to, among other things, rebut a charge of recent fabrication or bias.

## Background

The defendant is charged in a two-count Indictment.   Count One charges that in August 2012 the defendant violated campaign finance laws by contributing $20,000 to the Long Campaign in the names of other individuals.  Specifically, the Government will prove beyond a reasonable doubt at trial that the defendant engaged in conduit contribution fraud when he directed two individuals – Tyler Vawser, who worked for the defendant, and Denise Joseph, with whom the defendant was living and having an extramarital affair – to make contributions to the Long Campaign on behalf of themselves and their respective spouses with the understanding and promise that the defendant would pay them back for their contributions, which he did, in violation of Title 2, United States Code, Sections 441f and 437g(d)(1)(D).  Count Two of the Indictment charges the defendant with causing the Long Campaign to file materially false reports to the Federal Election Commission ("FEC") about the source of the campaign contributions charged in Count One, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## Discussion

**I.     D'Souza Should be Precluded From Making Irrelevant Motive Arguments, Introducing Evidence for the Purpose of Jury Nullification, and Making Allegations of Selective Prosecution**

Defense counsel repeatedly has represented to the Court and the media that the defendant did not have the requisite criminal intent to commit the crimes charged in the Indictment because D'Souza's conduct was motivated by a desire to help his friend Wendy Long ("Candidate Long") rather than a desire to secure a political favor or corrupt the election.  See e.g., March 4, 2014 Transcript at 7 ("There is not a scintilla of evidence that this was a corrupt endeavor by D'Souza. . . . There is no request that the candidate do anything in return.  This is, as I said before, an act of misguided friendship."); *D'Souza Pleads Not Guilty to Illegal Campaign Donations*, by Patricia Hurtado, Jan. 24, 2014, bloomberg.com ("'At worst this was an act of misguided friendship by D'Souza,'" the defense lawyer said. "'There was never a corrupt agreement of any kind,'" he said.  "'There was no quid pro quo in this case.'"). Such arguments and any evidence of these purportedly benign reasons for engaging in the charged conduct should be prohibited because they are irrelevant to the charged crimes and would be offered by the defendant solely for the prohibited purpose of seeking jury nullification.

In a similar vein, and without any good faith basis, the defendant repeatedly has asserted to the Government (and through others in the media) that his prosecution is politically motivated, or motivated by considerations other than legitimate law enforcement considerations.  These selective prosecution arguments are entirely without merit, but regardless, such allegations, or any other invitation to the jury to consider the Government's alleged motives in bringing the instant charges, are not appropriate for the jury's consideration and should be precluded at the defendant's trial.

### A.   Applicable Law

#### 1.   Relevance and Prejudice

Under the Federal Rules Evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.  In addition, the Court may excluded relevant evidence if its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . ." Fed. R. Evid. 403.

#### 2.   Jury Nullification

Jury nullification is "'a violation of a juror's oath to

apply the law as instructed by the court—in the words of the standard oath administered to jurors in the federal courts, to "render a true verdict <u>according to the law and the evidence</u>.'" <u>United States</u> v. <u>Moran-Toala</u>, 726 F.3d 334, 342 (2d Cir. 2013) (quoting <u>United States</u> v. <u>Thomas</u>, 116 F.3d 606, 614 (2d Cir. 1997)) (emphasis supplied). The Second Circuit has "'categorically rejected the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.'" <u>Id</u>. at 343 (alteration omitted) (quoting <u>Thomas</u>, 116 F.3d at 614).  Therefore, "defense counsel may not press arguments for jury nullification in criminal cases . . ." <u>Scarpa</u> v. <u>Dubois</u>, 38 F.3d 1, 11 (1st Cir. 1994).

### 3.  Selective Prosecution

The Government's exercise of its prosecutorial discretion is only reviewable under very limited circumstances.  "The Attorney General and United States Attorneys retain 'broad discretion' to enforce the nation's criminal laws. . . .  In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [her] discretion.'" <u>United States</u> v. <u>Armstrong</u>, 517 U.S. 456, 464 (1996) (quoting <u>Wayte</u> v. <u>United States</u>,

470 U.S. 598, 607 (1985), and Bordenkircher v. Hayes, 434 U.S. 357,

364 (1978)).

      Only where a defendant can demonstrate "selective

prosecution" is the prosecution's motivation subject to review.   Id.

And, in order to make a selective prosecution claim, a defendant

bears:

> the heavy burden of establishing, at least prima
> facie, (1) that, while others similarly situated
> have not generally been proceeded against because
> of conduct of the type forming the basis of the
> charge against him, he has been singled out for
> prosecution, and (2) that the government's
> discriminatory selection of him for prosecution
> has been invidious or in bad faith, i.e., based
> upon such impermissible considerations as race,
> religion, or the desire to prevent his exercise
> of constitutional rights.

United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974).

      Second, because a selective prosecution claim is not a

defense on the merits to the criminal charge itself, but one based

on "defects in the institution of the prosecution," Fed. R. Crim.

P. 12(b)(1), it must be asserted before trial.   United States v. Sun

Myung Moon, 718 F.2d 1210, 1229 (2d Cir. 1983); United States v.

Taylor, 562 F.2d 1345, 1356 (2d Cir. 1977).   Accordingly, such a

claim can never be properly presented to the jury, but rather should

only be considered by the Court before trial.   United States v.

Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) ("the selective prosecution

defense is an issue for the court rather than the jury"); <u>United States</u> v. <u>Jones</u>, 52 F.3d 924, 927 (11th Cir. 1995) (same); <u>United States</u> v. <u>Washington</u>, 705 F.2d 489, 495 (D.C. Cir. 1983) (same); <u>United States v. Bertoli</u>, 854 F. Supp. 975, 1076-77 (D.N.J. 1994) (precluding defense from presenting a defense or any evidence based on selective or vindictive prosecution because "[c]ase law definitively establishes that questions of vindictive prosecution and Government misconduct are not proper questions for the jury to consider"), <u>conviction aff'd</u>, <u>sentence vacated and remanded</u>, 30 F.3d 1384 (3d Cir. 1994); <u>United States</u> v. <u>Napper</u>, 553 F. Supp. 231, 232 (E.D.N.Y. 1982) ("The defendant does not have the right to present a selective prosecution claim to a jury.").

### B.   Discussion

#### 1.   D'Souza's Motives/Jury Nullification

The Court will instruct the jury on the elements of the two charged crimes – making a campaign contribution in the name of another and causing a false statement – and the level of intent the Government must prove beyond a reasonable doubt.  As set forth in the Government's Requests to Charge, for both Counts One and Two of the Indictment, the Government must prove beyond a reasonable doubt that the defendant acted knowingly and willfully, meaning that he acted on purpose, without mistake, and with the intent to do something

that the law forbids. <u>See</u> Government's Request to Charge, Request Nos. 9, 16.  Accordingly, in order to meet its burden on Counts One and Two of the Indictment, the Government is not required to prove that the defendant intended to corrupt an election or that D'Souza sought any benefit – lawful or otherwise – in exchange for making the contributions at issue.

Indeed, even if the defendant did not intend to corrupt the relevant election, did not seek an explicit benefit in exchange for making any contribution at issue in this case, and made the conduit contributions merely because of his friendship with Candidate Long, D'Souza is still guilty of the charged crimes if he made any contribution in the name of at least one other individual with the knowledge that such conduit contribution was unlawful.  As set forth in the Government's Request to Charge, motive is not an element of the crimes charged and the Government has no obligation to prove why the defendant made the conduit contributions at issue. <u>See</u> Government's Request to Charge, Request No. 22.

Whether D'Souza had a "corrupt" intent and whether or not friendship motivated D'Souza to engage in the charged conduct are irrelevant to the issues the jury must resolve.  Accordingly, testimony and documentary evidence that the defendant did not seek to corrupt the election or obtain a benefit from his conduct should

be prohibited.  Put differently, while evidence of motive, or lack thereof, to commit a crime is generally admissible as proof of a defendant's state of mind, the defendant's proffered motive here (friendship) and lack of a certain motive (corruption) have no relevance to the issue that the jury must resolve, e.g., whether when D'Souza made contributions to the Long Campaign in the name of at least one other individual, he knew that such a contribution was illegal.  The only purpose the defendant could have in offering such motive evidence would be the hope that a juror would disregard, be misled, and/or confused about this Court's instructions regarding the elements of the charged crimes and the requisite intent the Government must prove.  See Fed. R. Evid. 403.  This Court should not countenance such a nullification effort and thus should preclude the defendant from making these motive arguments and introducing evidence in support of such motives at trial.[1]

## 2.   Selective Prosecution

In a similar vein, the Court should prohibit the defendant from arguing to the jury or seeking to introduce evidence about the motives of the Government in indicting him.  The exercise of prosecutorial discretion is not a proper consideration at trial, and

---

[1] Relatedly, any argument or evidence that campaign finance laws are overbroad, unconstitutional, or ineffective are purely legal issues that are irrelevant during a trial and not for a jury to adjudicate. Accordingly, the defendant should be precluded from making these arguments at trial as well.

therefore the defense should be precluded from adverting to it before the jury.  As set forth above, the prosecution's exercise of its discretion is only reviewable under very limited circumstances, and because a selective prosecution claim is not a defense on the merits to the criminal charge itself, but one based on "defects in the institution of the prosecution," Fed. R. Crim. P. 12(b)(1), it must be asserted before trial.  Further, while the defendant here may assert a selective prosecution claim in a pretrial motion, assuming such motion is denied, he similarly should be precluded from presenting it to the jury.

In the alternative, even if – contrary to law – the Government's motivations were somehow relevant, pursuant to Rule 403 of the Federal Rules of Evidence, this Court should preclude reference to the Government's alleged motivation in bringing this prosecution.  If the defense impugns the Government's motivations in front of the jury, it would open the door to a full presentation by the Government about the background of the investigation and the Government's charging procedures and decisions, in order to demonstrate that the Government's conduct was consistent with the constitutional mandate to faithfully execute the laws.  U.S. Const. art. II, § 3.  Thus, the defendant's charge, and the Government's response, would create a mini-trial about the background of the

11

defendant and the investigation that would waste time and confuse the issues that are properly before the jury.  United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979) (en banc) (defendant's claim that the indictment was "a political instrument," even if relevant, was properly excluded pursuant to Rule 403 because it was an "extraneous and collateral matter" unrelated to the particular transactions at issue); United States v. Bertoli, 854 F. Supp. 975, 1078 (D.N.J. 1994) (even if prosecutor's motivation were relevant, it would be excludable under Rule 403); cf. United States v. Young, 470 U.S. 1, 13 (1985) ("the better remedy" is "for the District Court to deal with the improper argument of the defense counsel promptly" rather than invite the prosecution to respond in kind); Lawn v. United States, 355 U.S. 339, 323 n.15 (1957) (by referring in summation to prosecution as a "persecution" "instituted in bad faith," defendant invited the response by prosecution).

  In any event, even if the Court were to permit evidence related to the Government's alleged motive in prosecuting the defendant, the proof conclusively would demonstrate that the Government had no bad or impermissible motive.  To the contrary, the Government would expect the proof to show that the defendant's illegal conduit campaign contributions came to light as a result of a review by the Federal Bureau of Investigation, New York Field

Office, of then recent federal election campaign filings by candidates of both parties for New York's United States Senate seat held by Senator Gillibrand, rather than through any investigative focus on the defendant himself.   Accordingly, even assuming <u>arguendo</u> that selective prosecution arguments were permitted at trial, the Court should exclude them as not relevant and under Rule 403.

**II.      Evidence That D'Souza's Wife Did Not Authorize the Defendant to Make a $5,000 Contribution On Her Behalf to the Long Campaign is Admissible**

On or about March 4, 2012, the defendant contributed $10,000 to the Long Campaign via a personal check bearing only his name and a New York City address.   Because the individual contribution limit in 2012 was $5,000, the Long Campaign sent the defendant a form (the "Allocation Form") requiring the defendant to specify, among other things, whether the contribution was a contribution only from D'Souza himself, which would have made the donation over the contribution limit, or a joint contribution from D'Souza and D'Souza's wife ("D'Souza's Wife") for $5,000 from each of them.[2]   Specifically, the Allocation Form provides that individuals "may contribute up to $5,000 ($2,500 to the primary election; $2,500 to the general election)," and that "[f]ederal law requires [the Long Campaign] to use our best efforts to collect and

---

[2] Though they are still married, D'Souza and his wife separated in or about July 2012.

13

report the name, mailing address, occupation, and name of employer for each individual whose contributions exceed $200 in an election cycle."

The completed Allocation Form, which was returned to the Long Campaign, reflects that D'Souza's $10,000 contribution was purportedly made jointly by D'Souza and D'Souza's wife and the Allocation Form appears to bear the signatures of both D'Souza and D'Souza's Wife, dated March 24, 2012.  Consistent with the Allocation Form it received, the Long Campaign reported the $10,000 contribution to the FEC as being $5,000 from D'Souza and $5,000 from D'Souza's Wife.

If called as a witness at trial, the Government expects D'Souza's Wife would testify that she did not contribute or authorize anyone on her behalf to contribute any money to the Long Campaign, did not sign or authorize anyone to sign on her behalf the Allocation Form, and was unaware in March 2012 that this $5,000 contribution on her behalf was being or had been made.

### A.   Applicable Law

Rule 404(b) of the Federal Rules of Evidence permits the introduction of evidence of other acts for any purpose other than to show a propensity to criminality.  Fed. R. Evid. 404(b).  The Second Circuit follows the 'inclusionary' approach, which admits all

'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." United States v. Curley, 639 F.3d 50, 56, 57 (2d Cir. 2011).  When considering whether to admit evidence pursuant to Rule 404(b), district courts should consider whether: (1) the other-act evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value of the evidence is substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) a limiting instruction is appropriate.  Id. at 56-57.

        The Court of Appeals has routinely approved of the admission of other-act evidence with respect to the issues of knowledge and intent where, as is likely to be the case here, those issues are in dispute.  See, e.g., United States v. Germosen, 139 F.3d 120, 127 28 (2d Cir. 1998); United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996).  The Court has held that "[f]or uncharged crime to be probative knowledge and intent, '[t]he government must identify a similarity or connection between the two acts.'" United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (internal citations omitted). "Similarity being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]. There is no necessity for

synonymity but there must be substantial relevancy." <u>United States</u> v. <u>Perez</u>, 325 F.3d 115, 129 (2d Cir. 2003).

In the fraud context, the Court of Appeals has affirmed the admission of evidence of the defendant's "previous participation in a substantially similar scheme" where the defendant denied having knowledge or fraudulent intent. <u>United States</u> v. <u>Downing</u>, 297 F.3d 52, 59 (2d Cir. 2002) (affirming conviction in "pump and dump" securities fraud scheme where evidence had been admitted that defendant had prepared false audit reports to facilitate a separate securities fraud scheme); <u>United States</u> v. <u>Birrell</u>, 447 F.2d 1168, 1172 (2d Cir. 1971) ("[e]vidence of similar acts in fraud cases may be introduced where knowledge or intent is at issue, to give rise to an inference of knowledge or intent").

**B.   Discussion**

The Government may seek to introduce evidence at trial that D'Souza's Wife did not authorize, nor was aware of, the March 2012 $10,000 contribution to the Long Campaign.  Accordingly, the Government respectfully asks the Court to determine *in limine* that such evidence is admissible under Rule 404(b) to prove the defendant's knowledge, intent, absence of mistake, or lack of accident in connection with the charged conduct; more specifically, the $10,000 contributions to the Long Campaign from Tyler Vawser and

his wife, and from Ms. Joseph and Dr. Joseph, which D'Souza requested they make and for which D'Souza reimbursed them in cash the same or the following day that they made the contributions in August 2012.

The Government does not expect there to be a significant dispute at trial as to the underlying facts at issue. The proof that D'Souza requested and reimbursed Tyler Vawser and Denise Joseph a total of $20,000 in campaign contributions will be virtually uncontroverted. As stated above, however, at trial the Government expects that the defendant will challenge his knowledge and intent in engaging in these acts; more specifically his knowledge that what he was doing was unlawful and that he had the requisite criminal intent when he offered to and did reimburse Tyler Vawser and Denise Joseph $10,000 each in cash for their contributions.

The evidence that D'Souza provided false information to the Long Campaign about his own and his wife's contribution in March 2012 is relevant to establish that when the defendant engaged in conduit contributions five months later, he understood the contribution limits and rules. In addition, the evidence that the defendant had previously used his wife, without her knowledge or authorization, as a conduit to provide more of his own money to the Long Campaign than was permitted, helps establish that his actions with regard to the Vawsers and the Josephs were not mistakes or

17

accidents.   In other words, the evidence of illegality with regard
to his own and his wife's contribution will help prove that the
defendant knew that what he was doing in August 2012 was wrong and
it was not a fleeting, accidental misjudgment; it was part of a larger
pattern of flouting campaign finance limits he knew existed.

**III.      The Government Should be Permitted Under Certain
            Circumstances to Introduce Portions of the October
            Conversation in Which a Witness Describes Statements the
            Defendant Made About the Instant Case**

On or about October 30, 2013, almost three months prior
to the Indictment in this matter, Dr. Joseph – who was not acting
at the direction or instruction of the Government – made a
surreptitious recording of an in-person conversation he had with Ms.
Joseph in Michigan.   At the time of this recording, the Josephs were
married, but separated with Ms. Joseph residing in New York City with
the defendant to whom she was engaged.   Dr. Joseph was residing in
Michigan where he had lived with Ms. Joseph prior to her moving to
New York City to join the defendant in or about July 2012.

During the October Conversation, Ms. Joseph made various
statements about, among other things, D'Souza's intentions
concerning the instant prosecution.   For example, according to a
draft transcript of the October Conversation prepared by the
Government and provided to the defense, in response to a question
by Dr. Joseph about whether D'Souza intended to go to trial in this

18

matter if he were to be charged, Ms. Joseph stated, "he might plead guilty," under certain circumstances.  In a similar vein, later in the conversation in response to Dr. Joseph asking whether the defendant is "gonna plead guilty and then – or not guilty, then guilty, and retract his plea?" Ms. Joseph responds, "Yes."  She also states that the defendant intends to plead not guilty at least initially because "in the meantime[,] when he pleads not guilty, that gives him a window of opportunity to get his story out there."

The Government does not currently intend to offer portions of the October Conversation in its case-in-chief.  However, the Court should permit the Government to introduce portions of the October Conversation to, among other things, rebut a charge of recent fabrication or bias on the part of expected Government witnesses Ms. Joseph and Dr. Joseph.  For instance, the Government anticipates that Ms. Joseph may testify that the defendant told her that he was considering pleading guilty.  If during cross-examination of this witness, the defendant calls into question the truthfulness of such testimony, the Government should be allowed to introduce portions of the October Conversation, such as the ones quoted above, as prior consistent statement of Ms. Joseph.  See Fed. R. Evid. 801(d)(1)(B) (a witness's prior statement is not hearsay if it "is consistent with the declarant's testimony and is offered to rebut an express or

implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying").  On the other hand, if during her testimony, Ms. Joseph denies having been told by D'Souza that he was considering pleading guilty, the Government should be permitted to use portions of the October Conversation to impeach her.

In addition, the Court should permit the Government to introduce portions of the October Conversation if the defendant cross-examines Dr. Joseph about the recording of this conversation to try to establish that, among other things, Dr. Joseph is biased against the defendant and/or was trying to curry favor with the Government by making such a recording.  In those circumstances, at least portions of the October Conversation would become relevant and non-hearsay to demonstrate Dr. Joseph's lack of bias and his credibility.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that the Court grant the Government's motions *in limine*.

Dated:  April 17, 2014
        New York, New York

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                    By: /s/Paul Krieger_____
                        Carrie H. Cohen/Paul M. Krieger
                        Assistant United States Attorneys

21