## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**Indict No. 14 Cr 034 (RMB)**

---

### UNITED STATES OF AMERICA

- against -

### DINESH D'SOUSA,

**Defendant.**

---

### DEFENDANT'S RESPONSES TO THE GOVERNMENT'S *IN LIMINE* REQUESTS

**BRAFMAN & ASSOCIATES, P.C.**
*Attorneys for Defendant Dinesh D'Sousa*
767 Third Avenue, 26th Floor
New York, New York 10017
212 750-7800

BENJAMIN BRAFMAN
MARK M. BAKER
ALEX SPIRO
        Of Counsel

## <u>Table of Contents</u>

Response to the Government's First *in limine* Request

    **A.**   *Defendant's Constitutional Right to Testify as to Motive and Wilfulness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    **B.**   *Selective Prosecution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Response to the Government's Second *in limine* Request

    *Rule 404(b) Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Response to the Government's Third *in limine* Request

    A.   *The Joseph Tape Recording* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.   *Evidence of Dr. Louis Joseph's Extra-Marital Affair* . . . . . . . . . . . . . . . 12

## Response to the Government's First *in limine* Request

**A.**   *Defendant's Constitutional Right*
*to Testify as to Motive and Wilfulness*

There can be no argument that

the right to testify on one's own behalf at a criminal trial has sources in
several provisions of the Constitution. It is one  of the rights that "are
essential to due process of law in a fair adversary process." The necessary
ingredients of the Fourteenth Amendment's guarantee that no one shall be
deprived of liberty without due process of law include a right to be heard
and to offer testimony:

*Rock v. Arkansas*, 483 US 44, 51 (1987) (quoting *Faretta v. California,* 422 U.S. 806,

819, n. 15 (1975)). Thus,

Even more fundamental to a personal defense than the right of self-
representation, which was found to be "necessarily implied by the structure
of the Amendment," is an accused's right to present his own version of
events in his own words. A defendant's opportunity to conduct his own
defense by calling witnesses is incomplete if he may not present himself as
a witness.

*Rock v. Arkansas*, 483 U.S. at 52 (quoting *Faretta*, 422 U.S. at 819). *See also United*

*States v. Siddiqui*, 699 F3d 690, 705 (2d Cir 2012) ("the most important witness for the

defense in many criminal cases is the defendant himself," and he has the "right to present

his own version of events in his own words" (quoting *Rock,* 483 U.S. at 52),  as amended

(Nov. 15, 2012), *cert denied*, 133 S. Ct 2371 (2013).

The Government, by its first *in limine* request, seeks to undermine this

sacred premise by precluding Defendant from testifying as to his non-corrupt motivations

in having acted in a manner which the Government alleges was violative of a federal

penal statute. In order for the Defendant to explain himself, and thereby fully present

himself to the jury, in other words, "to be heard and to offer testimony," *id.,* it is essential that he be able to discuss why he may have acted in a manner that the Government characterizes as criminal.

In seeking to preclude Defendant to testify as to his motivations, the Government argues that "[w]hether D'Souza had a 'corrupt' intent and whether or not friendship motivated D'Souza to engage in the charged conduct are irrelevant to the issues the jury must resolve." Request at p. 9. Because the government's request is premised on a short-sighted view of the law in this particular case, we respectfully disagree.

As we have requested the Court charge the jury on the element of wilfulness, it is necessary that the Government prove that Defendant had to have been aware that his actions were in violation of a criminal statute. Thus, we are requesting that the court charge the jury that, before it would be authorized to find Defendant to be guilty, it must first determine that he was specifically aware that his alleged reimbursements of campaign contributions to the four named individuals were in violation of law, rather than merely contrary to a campaign rule.

The same argument in support of that instruction applies to defeat the Government's initial *in limine* request. Thus, as also explained in Point I of Defendant's memorandum of law in support of his motion to dismiss, with the decision in *McCutcheon v. Fed. Election Com'n*, 12-536, 2014 WL 1301866 (April 2, 2014), the

Federal Election Campaign Act has now attained a level of complexity similar to that which prompted the Supreme Court to carve out exceptions to the definition of wilfulness in *Cheek v. United States*, 498 U.S. 192 (1991) and *Ratzlaf v. United States,* 510 U.S. 135, 137(1994).

 Indeed, as explained in Defendant's motion to dismiss, the complexity of FECA is extraordinary. Moreover, given the holding in *McCutcheon*, and certainly its distinguishing between "base" and "aggregate" campaign contribution limits, just as with the tax and structuring laws, there is now likewise "presented the danger of ensnaring individuals engaged in apparently innocent conduct." *Bryan v United States*, 524 U.S. 184, 194 (1998). Thus, as we argued, because the contrary determinations in *United States v. Danielczyk*, 788  F. Supp. 2d 472, 479 (E.D. Vir. 2011) *and United States v. Whittemore*, 944 F.Supp.2d 1003 (D. Nev. 2013) antedated *McCutcheon,* they should no longer be persuasive." Memorandum of law at p. 11, n. 3. In the end, absent specific awareness of §441(f), the average person could easily become "ensnared" since it is simply not *malum in se* that there exist limitations on individual contributions.

 It follows that if wilfulness requires a more elaborate explanation, then the fact of whatever motivated Defendant becomes highly relevant. On such premise, we respectfully submit, because Defendant's motivations go hand in hand with a finding of whether he acted wilfully, it would amount to an unconstitutional abridgment of his sacred right to testify in his own behalf were he to be hog-tied in that effort with respect

to precisely what he could testify about.

## B. *Selective Prosecution*

Defendant agrees that the issue of "Selective Prosecution" is an issue of law for the Court and not a question of fact for the jury.

### Response to the Government's Second *in limine* Request

*Rule 404(b) Evidence*

The Government seeks to admit certain evidence, either pursuant to Fed. R.

Evid. 404(b) or as part of the narrative with regard to the charged offenses on the issue of

"knowledge and intent" (G at 13). In essence, the Government seeks to introduce

evidence that the defendant failed to inform his wife of their legal contribution, for which

he was not charged. Moreover, the Government further alleges that the defendant signed

his wife's name on the contribution form without her permission or authority.

Rule 404(b) of the Federal Rules of Evidence provides that:

> Evidence of other crimes, wrongs or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith.  It
> may, however, be admissible for other purposes such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity or absence of
> mistake or accident.

To determine whether the evidence offered by the Government is

admissible, the District Court must apply a three part analysis under Rule 404(b). First,

the District Court must decide whether there is sufficient evidence of the other act

actually occurred. Second, if so, the court must decide whether the evidence of the other

act is probative of a materials issue other than character. Third, if the evidence is

probative of a material issue other than character, the court must determine whether the

probative value of the evidence is substantially outweighed by its prejudicial effect. See

*United States v. Trujillo*, 376 F. 3d 593, 605 (2d Cir. 2004). Should the Court determine

that the evidence is more probative than prejudicial, then admission of the evidence is

subject to an appropriate limiting instruction. See also, *United States v. Mickens*, 926 F.

2d 1323, 1328-29 (2d Cir. 1991), *cert. denied*, 502 U.S. 1060 (1992) ("other act"

evidence to establish defendant's consciousness of guilt is subject to a Rule 404(b)

analysis.)

   The rule allows for the introduction of "wrongs" into evidence in limited

circumstances and disallows the admission of such evidence if it is offered to show a

propensity to criminality. Fed. R. Evid. 404(b).The Government rests its argument for

admission on the premise that this other "wrong" is instructive as to the issue of his later

intent in making the charged contributions. And so the question is quite simply whether

the failure to inform his wife about their legal donation, some five (5) months before the

alleged criminal contributions, makes his intent in the latter more insidious. It certainly

does not.

   The initial donation the defendant and his wife made was legal. The

defendant's failure to tell his wife was not an attempt to conceal this lawful conduct. It

was, instead a byproduct of a marriage in which the defendant took primary responsibility

for financial decisions, as is a common practice among married couples, where, with at

least implicit approval of the partner, one routinely signs the other's name to contracts,

tax returns and other documents. In no way does this failure to communicate speak to the

defendant's later intent. Since he had no reason to tell or not to tell his wife about the donation, no information can be gleaned from this failure.

In this case, the only purpose in introducing this evidence is to show that the defendant was not truthful in a similar situation. It is exactly the type of evidence the Rule is designed to exclude.  It has no purpose besides propensity. Therefore, the evidence is not admissible.

## Response to the Government's Third *in limine* Request

**A.**     *The Joseph Tape Recording*

The Government seeks leave to admit certain portions of a transcript of a tape recorded conversation in which Louis Joseph engaged with his then estranged wife, Denise Joseph, insofar as they relate to Defendant's purported stated intention to plead guilty in this case. The Government assures us that it does not intend to offer such proof in its case-in-chief, but only in response to the anticipated cross-examination of Denise Joseph because it "anticipates that Ms. Joseph may testify that the defendant told her that he was considering pleading guilty."

Even if such statements would not be violative of Fed. R. Cr. P. 410 ("a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea" is inadmissible) because they were not made to the United States Attorney, *see United States v Lawson*, 683 F.2d 688, 691 (2d Cir 1982); *United States v. Stern*, 313 F. Supp. 2d 155 (SDNY 2003) (Lynch, J.), it is hard to understand how they could survive any Rule 403 analysis. Surely, because a defendant's speaking with a trusted person over whether he will or will not plead guilty is not so much an admission of culpability as a discussion over how best to minimize one's exposure to incarceration. Given the evidence that may be mounted against him notwithstanding innocence, any probative value is minimal while the probability of undue prejudice is overwhelming.

-8-

As the Supreme Court long ago recognized,

> while most pleas of guilty consist of both a waiver of trial and an express
> admission of guilt, the latter element is not a constitutional requisite to the
> imposition of criminal penalty. An individual accused of crime may
> voluntarily, knowingly, and understandingly consent to the imposition of a
> prison sentence even if he is unwilling or unable to admit his participation
> in the acts constituting the crime.

*North Carolina v. Alford*, 400 U.S. 25, 37 (1970). Obviously, the purported statement by

Defendant to Denise Joseph attributed to defendant does not distinguish between this

latter possibility on the one hand, and a unequivocal admission of wrongdoing on the

other.

Moreover, the government has clearly either not thought this out very

carefully, or it only recognizes those parts of the transcript which, at first blush, appear to

support its case. Yet, there is a whole lot more that was stated in that recorded

conversation which Defendant would have a constitutional right to elicit, both owing to

the Rule of Completeness[1] and Defendant's Fifth Amendment right to confrontation --

---

[1] Fed. R. Evid. 106 provides: "If a party introduces all or part of a writing or recorded
statement, an adverse party may require the introduction, at that time, of any other part—or any
other writing or recorded statement—that in fairness ought to be considered at the same time."
To be sure "[t]he completeness doctrine does not, however, require the admission of portions of a
statement that are neither explanatory of nor relevant to the admitted passages." *United States v.
Johnson,* 507 F.3d 793, 796 (2d Cir.2007) (internal quotation marks omitted), *cert. denied,* 552
U.S. 1301, but it certainly does require that, even though hearsay, an "omitted portion of [the]
statement must be placed in evidence if necessary to explain the admitted portion, to place the
admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial
understanding of the admitted portion." *United States v Johnson,* 507 F3d 793, 796 [2d Cir 2007]
(quoting *United States v. Castro,* 813 F.2d 571, 575–76 (2d Cir.1987), *cert. denied,* 484 U.S.
844). For the Court's convenience, we attach as an Exhibit a copy of the draft transcript of the
conversation provided by the Government.

"the 'greatest legal engine ever invented for the discovery of truth'" *California v. Green*, 399 US 149, 158 (1970) (quoting 5 Wigmore § 1367).

Specifically, should it be elicited from Denise Joseph that Defendant had told her that he intended to plead guilty, a fair question to test her credibility would be whether she had ever told that to anyone else in the past. Then in response to either a truthful response that she had told her estranged husband, or pursuant to a refreshed recollection that she had done so in an earlier conversation with Louis Joseph, the following questions could then properly be asked.

Well, then Ms. Joseph, in that same conversation with your estranged husband, didn't you also report the following statements that had also been made to you by Mr. D'Souza,

- That, "That he just was trying to give friends some money?" P. 5.

- That he "didn't do anything corrupt. It was never about that***No, nobody else. There's nothing else. This is it. So, he has to plead not guilty in order to say that.. *Id.*

- That "Nobody else gets prosecuted for this stuff. Nobody gets prosecuted. So he is getting prosecuted and he wants to take all the punishment they need to dish out, but he does not go to jail." PP. 8-9

- That "nobody else in the world is even prosecuted, much less sent to jail for this." P. 10

Although there is far more, the point is clear: the government cannot have it both ways. It cannot preclude Defendant from demonstrating his motive, while at the same time eliciting a non-probative expression of an intent to plead guilty without

counsel's being allowed to explore the full context of Defendant's statements. In short, if the Government opens the door with such a prejudicial line of questioning, defense counsel has an unqualified right to walk its witness through it. *See e.g. United States v. Bah*, 574 F.3d 106, 117 (2d Cir 2009) ("Having prevailed on its *in limine* motion to preclude Bah from introducing evidence of his New Jersey license, the government introduced reams of bank records from New Jersey showing money transfers related to Bah's New Jersey business. By introducing this evidence, the government arguably opened the door to Bah introducing evidence of his New Jersey license, but this argument was not raised at trial or on appeal.") (citing *United States v. Stewart,* 433 F.3d 273, 308 (2d Cir.2006)and *United States v. Beers,* 189 F.3d 1297, 1300 (10th Cir.1999)).

It is also crucial to note that significant portions of the conversation between Denise and Louise Joseph, which he recorded surreptitiously, involves his persistent efforts to extract her awareness of counsel's advice to Defendant concerning whether he should plead guilty. *See e.g. Transcript* at p. 4 ("And what's Brafman's strategy? To plead not guilty, then guilty, then not guilty?"); at p. 11 ("So what does Brafman think of this wonderful plan?"). Most respectfully, the significant interference with, and abridgment of, Defendant's Sixth Amendment right which would inevitably result by the Government's opening the door to such a line of necessary curative questioning, which Defendant would reluctantly need to pursue in order to minimize any damage from the limited declaration of intent which the Government seeks to introduce,

is certainly something that should give this Court pause in allowing the Government to so

proceed in the first instance.

B.      *Evidence of Dr. Louis Joseph's Extra-Marital Affair*

        Finally, we note that the Government intends to prove

> beyond a reasonable doubt at trial that the defendant engaged in conduit
> contribution fraud when he directed two individuals -- Tyler Vawser, who
> worked for defendant, and Denise Joseph, *with whom he was living and
> having an extramarital affair* -- to make contributions to the Long
> campaign on behalf of themselves and their respective spouses with the
> understanding and promise that the defendant would pay them back for their
> contributions, which he did, in violation of 2 U.S.C. Sections 441f and
> 437g(d)(1)(D).

Government's memorandum at p. 3; emphasis added.

        It is respectfully submitted that if the Government intends to offer proof of

Defendant's affair with Denise Joseph, the door will be opened to evidence that

Defendant's conduct was no more egregious than that of other witnesses whom the

Government intends to offer. In fact, four of the  principal witnesses/characters in this

case were, at various times, engaged in extra-marital affairs. However distasteful, it is

nevertheless a subject that will have to be discussed with each of the witnesses in order to

demonstrate bias and in fairness to the defendant. At the least, it will be necessary by such

proof to  place the defendant's own personal affair in proper context.

        The undisputed evidence at trial will show that the Defendant's wife, Dixie,

was involved in an affair that impacted negatively on their marriage. Soon thereafter,

while still married, but with his marriage in shambles, Defendant himself became

-12-

personally involved with Denise Joseph, who, together with her then husband, Dr. Louis

Joseph, were two of the people who contributed to the Long campaign and were

reimbursed by D'Souza. In fairness to Denise Joseph and Defendant, if the Government's

proceeds with its proffer, it becomes highly relevant that, at the time Denise Joseph

became involved with D'Souza, she had already discovered that her husband, Dr. Joseph,

was himself also involved in an extra-marital affair.

    Under such circumstances, certainly given the obvious motive behind Dr.

Joseph's surreptitious recording of his conversation with Denise, the affair between

Denise Joseph and Defendant becomes relevant under Fed. R. Evid. Rule 401 on the issue

of bias and certainly passes muster under Rule 403. *See e.g. Delaware v. Van Arsdall*, 475

U.S. 673, 678-79 (1986) (although such rulings are certainly in the district court's

discretion, "[o]f particular relevance here, "[w]e have recognized that the exposure of a

witness' motivation in testifying is  a proper and important function of the constitutionally

protected right of cross-examination." (quoting  *Davis v. Alaska,* 415 U.S. 308, 316-317

(1974), citing *Greene v. McElroy,* 360 U.S. 474 (1959)); *United States v. Figueroa*, 548

F.3d 222, 230 (2d Cir 2008) ("Bias is a term used in the 'common law of evidence' to

describe the relationship between a party and a witness which might lead the witness to

slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may

be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.

Proof of bias is almost always relevant...." ) (quoting *United States v. Abel,* 469 U.S. 45, 52 (1984).

Thus, in the event the Government opens the door to Defendant's indiscretions, if the Dr. Joseph's own marital infidelity is not allowed into evidence, the defendant will be portrayed as a "home wrecker," when that is simply not true. Likewise, since Dr. Joseph will be a hostile witness, his bias against Defendant for having an affair with his wife becomes equally as relevant as does Joseph's own affair. All things considered, and as the Court of Appeals recently stated in another context, "courts should strive to level the playing field by rendering the process as fair and reasonable as is practical in the circumstances." *Pham v United States,* 317 F.3d 178, 188 (2d Cir. 2003). Here, such a result can only be achieved by allowing defense counsel to probe into Dr. Joseph's personal failings in the same manner as the Government seeks to highlight those of Defendant.

Dated:     New York, New York
           April 23, 2014

                                   **BRAFMAN & ASSOCIATES, P.C.**
                                   *Attorneys for Defendant Dinesh* D'Sousa
                                   767 Third Avenue, 26th Floor
                                   New York, New York 10017
                                   212 750-7800

                     By:     _____
                                   BENJAMIN BRAFMAN
                                   BB2285

MARK M. BAKER
ALEX SPIRO
           Of counsel

-14-

# EXHIBIT 1

UNITED STATES v. DINESH D'SOUZA

| | |
|---|---|
| Date: | October 30, 2013 |
| Time: | 7:30 p.m. |
| Participants: | Joseph, Denise (DENISE)<br>Joseph, Louis (LOUIS) |
| Key: | Unintelligible (UI)<br>Inaudible (IA)<br>Phonetically (PH)<br>Stutters (ST)<br>Voice Overlap //<br>Stated Incorrectly (SIC)<br>Background Conversation [ ] |

*********************************************************************************
*

[BEGINNING OF CONVERSATION]

DENISE:          – and some people are just looking – bothering them.

LOUIS:           Where'd you come from? DC?

DENISE:          Yeah.

LOUIS:           Reagan or Dulles?

DENISE:          Reagan.

LOUIS:           How's Ran Paul?

DENISE:          It was such a trip –

LOUIS:           Did you tell him about me?

DENISE:          // It was so much fun, I could've died.

LOUIS:           Did you tell him about me?

DENISE:          Um, yeah I told him. I told him (IA).

LOUIS:           No.

DENISE:          Here it is.

LOUIS:                Alright then.

DENISE:          Yeah, because he's coming to New York and he wanted me to stay there 'cause his wife is not around.

LOUIS:                He wanted you to stay with him?

DENISE:          No – well I mean, not with him I guess but –

LOUIS:                // Ah, ha!

DENISE:         It's just – but, you don't know – he's a really scared man. He has like, a serious shyness issue. So, I'm giving you a number. He said he's gonna be in Detroit in the District Economic Club I think on December sixth (6th).

LOUIS:                (IA).

DENISE:         But, it was really amazingly fun. We smoked cigars.

LOUIS:                What's going on with the case? Any indict –

DENISE:         // Oh gosh…

LOUIS:                any indictments yet, or no?

DENISE:         We went to see a crisis manager all morning today.

LOUIS:                Yeah.

DENISE:         It was the most ridiculous, stupid nonsense. So, I guess this guy went to Dartmouth with Dash, but Dash didn't know him. But, he's like all up in Dash's business. And he's like, "You know, people are gonna say we're Dartmouth buddies." And basically, I don't even know his way, so it don't make any sense. But, I just sat there for hours – and I sat there for hours with this man. And…so I guess he's done all – all the crisis management for Michael Jackson on one of the pedophilia stuff – the sleepovers, um, Winona Ryder, Dominique Strauss-Kahn…

LOUIS:                // So, that didn't go well.

DENISE:         // who else? No, I did go well.
LOUIS:                Okay –

DENISE:         // Winona Ryder had a whole bunch of drug charges, and what they were trying to do is get the drug charges dropped 'cause they were more -- jail and serious – and the shoplifting charges. Anyway, so he says he has this whole repertoire, but I can't even properly translate because he sounds stupid, but basically he wouldn't say anything. He just kept saying things like, "Well, I have to talk to a lawyer", and "I'm not a cowboy, and if you – you want a cowboy and I actually can't be your publicity firm, and nobody can know I'm working for you." And – and so, you know, I, um,

and then, you know, " How it works is sometimes you wanna get people to speak up for you." And so, I'm like, okay, what people? He said, "Well, there's bloggers and there's some pundits." And I'm like, okay, can you just give me examples of whom? And then Dinesh said, well, what about someone like Alan Dershowitz? He says, "Well, there's this blogger from The Daily Caller that would do it." And it was one long, stupid session. So –

LOUIS:        What – who is this guy? What's his name?

DENISE:      Desoline? I don't remember; Deslander. He writes books too, and so he gave me like –

LOUIS:        Is he a Black person?

DENISE:      No, he's a White man.

LOUIS:        // (IA) okay. His name's Deslander; that's first name or last name?

DENISE:      // No, no that's his last name. It's some – it really – kinda Dutch name maybe. Anyway, so it was just stupid. It was – and so finally when we got outta (UI). Oh, and then he starts talking about, "And I know you don't have as much money as Proctor and Gamble and those are the companies I usually (UI). But don't worry; I'll give you a good price." And I'm still asking, so what exactly will you do? "Well, I might craft a message." And it just went on and on like that. So anyway, he said, "What do you think?" And I said, well, what do you think? And I – I said look; I don't have a very high opinion of what just happened. So then there's some Black lady named Judy…something. She used to work for Bush and somebody else. And um…she does PR. And um, we're supposed to go meet her, but they were like, dedicated – think that Churchill does today. Like Churchill's relatives came from England and John Boehner and stuff; they were doing this dedication in the House, so we had to go there. And we never got to see the (UI).

LOUIS:        // So when's this indictment gonna happen?

DENISE:      He says ninety nine point nine percent (99.9%) sure in November. And the second (2nd) half.

LOUIS:        What do you mean the second (2nd) half?

DENISE:      After the fourteenth (14th).

LOUIS:        And why is that?

DENISE:      Because that's when his other legal case ends.

LOUIS:        What other legal case?

DENISE:      The one he's having with, um, arbitration with a partner from his movie

| | |
|---|---|
| LOUIS: | twenty sixteen (2016) -- |
| DENISE: | Why would they wait until then? |
| LOUIS: | Why would they do it for him? I don't know 'cause Branfman said that he can get them to do that. It would be really hard because if you're in arbitration, how can you go to… |
| DENISE: | And what's Brafman's strategy? To plead not guilty, then guilty, then not guilty? |
| LOUIS: | Well, that is one interesting thing that he did raise, because he said something like, you can't say I'm sorry for that thing I didn't do. So – but, I mean, this whole thing sounded really stupid and really expensive. So – and he's saying that you can't have any PR person; that he doesn't think that's a good idea. Whereas, I actually don't know if I agree with that. He's saying that the movie can do all the PR, but the movie shouldn't have a PR person. |
| DENISE: | What movie? |
| LOUIS: | Well, the movie company that's doing like, America for instance. So, I don't know if I actually agree with that. I think it might be cool to have a PR person constantly make statements and stuff like that. |
| DENISE: | Yeah, but what moves did he actually make? Is he gonna plead guilty or what? |
| LOUIS: | Well, as far as I know, he's pleading not guilty. |
| DENISE: | And then what? He's just gonna go to trial? |
| LOUIS: | No, then you can withdraw your plea. Remember I told you he's pleading not guilty so he can see what Judge he gets? And in the meantime when he pleads not guilty, that gives him a window of opportunity to get his story out there |
| DENISE: | Ah. |
| LOUIS: | (cough) And he might plead guilty in order to get, um – if he feels like the Judge is good enough, but we don't know that yet. But last – I don't know if it was last night or the night before when you were calling me, the reason I was calling – |
| DENISE: | // Yeah, but isn't it the prosecution that deter – that recommends a sentence? |
| LOUIS: | No! Apparently, no! Apparent – no. There's no plea bargaining in this – in Federal Court. Nothing like that – no. |
| DENISE: | Mmm. |

| | |
|---|---|
| LOUIS: | There's only – you can take a chance with a Judge. There's no plea bargaining. |
| DENISE: | Really? |
| LOUIS: | Yeah, yeah. Exactly. Exactly. So, it's an interesting procedure and I actually meant to ask him what happens if you plead guilty and the Judge says, "Okay. Two (2) months jail time." Could you un-plead guilty and go to trial at that point? Um, so that's the question I have to ask. |
| DENISE: | After you're sentenced? |
| LOUIS: | Yes… |
| DENISE: | (laughing) |
| LOUIS: | because there's no plea bargain. So, it's kinda like they're skipping that for some reason. See what I'm saying? So – but the point is, right now – right now his main goal is to get this whole, um, story out. |
| DENISE: | What story? |
| LOUIS: | What happened. |
| DENISE: | What – |
| LOUIS: | 'Cause if he pleads guilty, then he really can't – it'll be that much harder. |
| DENISE: | What's he gonna say? That he just was trying to give friends some money? |
| LOUIS: | It's exactly what he did. |
| DENISE: | But who did he give the money through? Tyler and who else? |
| LOUIS: | Me. |
| DENISE: | That's it? |
| LOUIS: DENISE: | You mean, yourself? |
| | No. I mean, there's was only two (2) people involved? |
| LOUIS: | Well, you know there's only two (2) people involved. Yes, Louie. This man didn't do anything corrupt. It was never about that. I know you were sitting there hoping that he was like part of some bigger scheme – |
| DENISE: | Nah, I wasn't, I wasn't. |
| LOUIS: | No, nobody else. There's nothing else. This is it. So, he has to plead not guilty in order to say that, but…I'm – I (ST) – this is not the right price and schedule (UI). And – |

| | |
|---|---|
| DENISE: | Why don't you just get – write a letter to the New York Times? |
| LOUIS: | Well, this guy says New York Times is gonna do it, but I don't know. But yeah, he's gonna write a letter to – no, he's not gonna do anything because if he does something, it might look like he's avoiding responsibility. So the movie is going to do it. And the PR person is gonna be the movie's PR person, but obviously he is Louie. But it's just that he can't – but the movie has every right to defend itself, whereas  - I think that's what he can tell the Judge; "Judge, I'm not trying to avoid responsibility. This is not (UI). The movie is gonna (UI). If the movie wants to protect my reputation, then obviously it does."  Because, you know – and that's the movie's business right (cough). |
| DENISE: | But what if U.S. Attorney's Office writes something first? |
| LOUIS: | They will. |
| DENISE: | Yeah. |
| LOUIS: | They will. They probably will. I mean, unless we know exactly what's gonna happen, I (ST) think they will. |
| DENISE: | So they're gonna strike first. |
| LOUIS: | Well, yes. But, see – well, the whole thing is, is these people are paid for something. So, that's what I was trying to ask this man. Like, so that's not necessarily true (UI) how it was. Because – so, say if you have somebody set up that agrees at the New York Times, that they get a call, immediately they push a button and it goes online at New York Times. So, as soon as Dinesh is indicted – if we have that set up, then that's not necessarily true that they get to him first. But it could be. |
| DENISE: | Could be the first, and at the same time. |
| LOUIS: | Yes. |
| DENISE: | And who's the prosecution for this? |
| LOUIS: | Preet Bharara who is this Indian man who wants Eric Holder's job. |
| DENISE: | That's not the prosecutor. I was -- I remember. |
| LOUIS: | I know, but he -- that lady works with this guy. She's just a, um, a minion. |
| DENISE: | So, he'll be the one at the Court? |
| LOUIS: | Yes. Exactly. She's just a minion. The group was there at the ceremony |
| DENISE: | Oh. So the indictment gets delivered, but you don't even know what you guys are gonna do yet. |

| | |
|---|---|
| LOUIS: | Well, like I told you – |
| DENISE: | // Aside from Dinesh – (ST) aside from some – some movie; writing, uh… |
| LOUIS: | // there's always (UI). It's not 'some movie', it's a movie company (UI) entertainment. (UI), there's a movie company. |
| DENISE: | Okay. It's a movie company that he happens to own that's gonna write a letter on behalf of him? |
| LOUIS: | Not a letter, they're gonna – don't you understand? It's not gonna be a letter Louis, it's gonna be an ugly PR campaign. There's gonna be movies there's gonna be TV, there's gonna be news, there's gonna be articles, there's gonna be blogs, there's gonna be – I don't know; they might come try to find us. I don't know if they're gonna try coming, but there's nothing I can do about that. You aren't Louis Joseph, you're their cousin or my cousin, I'm my cousin; that's the end of it. |
| DENISE: | Thanks for dragging me into this. |
| LOUIS: | I can thank you for, say (IA). |
| DENISE: | Yeah, (UI). |
| LOUIS: | Yeah, because you're scum. |
| DENISE: | Yeah, but you're – now you're choosing – |
| LOUIS: | And you didn't – |
| DENISE: | You're (ST) choosing this by the way, by saying, "Okay Dinesh. Yeah, drag me into this." |
| LOUIS: | Drag me into this how? At least this man can control it. You want me to just not have any control over it and avail myself to whatever's – |
| DENISE: | // Oh, you have no – you have no control over it. |
| LOUIS: | Some people say to him – no, but this may get to help make decisions. Like in the crisis management firm, I was like, you know, you – I understand you see and (UI) charges that much, but you can't charge anything unless you say what it is you're going to do. |
| DENISE: | So he's – but he's gonna plead guilty and then – or not guilty, then guilty and retract his plea? |
| LOUIS: | Yes…but only if he gets a good Judge, see. |
| DENISE: | (UI) thinks he can win – win this case? How? |
| LOUIS: | I mean, nobody thinks he should really go to trial. Yeah, I mean – |

DENISE:    How?

it's (ST) not a matter of really losing the case. See, and the thing is – I (ST) mean, I told him exactly any sensible thing that this man told him because at the end of the day, this whole thing – I think I told you this last week too – my whole idea with crisis management is simply to scare the shit outta the Judge, the prosecutor and everybody, and even the administration; that they have to stop. Because as long as Dinesh is taking it quietly, then they can go after him. Maybe they feel he's too scared. But as soon as they expose it and they find out that this is a witch hunt, then there is – then

LOUIS:    they're gonna be too scared to do anything. So going to trial –

DENISE:    // That'll probably blow up in your face. Are you kidding me?

LOUIS:    This is the right thing to do, because this is the right thing.

DENISE:    // Okay. Because the problem is, is that he's waving the banner for morality.

LOUIS:    No.

DENISE:    Everybody's gonna –

LOUIS:    That doesn't make sense.

DENISE:    Yeah, he is.

LOUIS:    No, that doesn't make sense.

DENISE:    // So guess what? He's gonna be held to a high moral standard, and the hypocrisy won't fly.

LOUIS:    That doesn't make sense.

DENISE:    How does that not make sense? It makes perfect sense.

LOUIS:    // Exactly. Hypocrisy won't fly. He's happy to be punished for what he did. And he's saying –

DENISE:    Right.

LOUIS:    he's saying (UI) not guilty is simply a legal statement. If you go explain that I am guilty of x, y and z, and you will explain exactly what he did, but I am not guilty of this crime worthy –

DENISE:    // But what does the law say?

The law doesn't – it doesn't; exactly. The – what the law says? I'll tell you what the law says. As you know, law (UI) the law, and law's case law, and there is not one – even one human being whose ever been persecuted, much less sent to jail – not been prosecuted, much less sent to jail for what

LOUIS:    Dinesh has done. There is not one person. There is no case law –

DENISE:    // For a campaign trial? You're telling me –

LOUIS:    // yes. There is zero (0) case law.

DENISE:    nobody has been sent jail for a campaign trial?

LOUIS:    // No, nobody. Nobody has been sent to jail for a campaign fraud. Every single time somebody – I don't mean jail, I mean prosecuted – every single time somebody has even been prosecuted, they've got some scheme, they've got some big thing going on, there's some dis -- dishonesty, and like fraudulent intent to unjustly --

DENISE:    // Right. Of course, of course. But here's –

LOUIS:    Not a person has been ever prosecuted for what he did. So this is a clear witch hunt.

DENISE:    // But here's – but here's the thing – no, no, no, no, it's not a clear cut witch hunt, because of the fact that he holds himself to a higher –

LOUIS:    // Yes it is Louie. No!

DENISE:    // he waves a banner of morality.

LOUIS:    // Because he holds himself to a higher standard; that's the whole point. Nobody else gets prosecuted for this stuff. You – listen to what I'm saying. Nobody gets prosecuted. So he is getting prosecuted and he wants to take all the punishment they need to dish out, but he does not go to jail.

DENISE:    // Let me give you an example here. Okay –

LOUIS:    I do not agree with you Louie. And I'm telling you I'm right on this, and we'll just have to see. You can have your opinion. If you wanna tell that the – uh, the media, you're fine. I'm simply telling you that is not my opinion, and the man is getting punished. He is willing to take this, but he doesn't want to go to jail. And he shouldn't go to jail for this.

DENISE:    Well, he broke the law.
LOUIS:    

DENISE:    Yeah; he didn't break that law.
    He didn't?

LOUIS:    No.

DENISE:    What's the law say?

    That you had to have intent. Does that mean the narrow intent that you actually intended to do it, or you had to have an intent to defraud? And somehow nobody else in the world is even prosecuted, much less sent to

| | |
|---|---|
| LOUIS: | jail for this. |
| DENISE: | Nobody else in the world is waving the banner of morality and breaking the rules. |
| LOUIS: | // Nobody. That is absolutely not true. Yeah, he's breaking rules so he has to go through all of this – |
| DENISE: | Right. |
| LOUIS: | he has to go through all his expense – |
| DENISE: | // Right. So he's saying – |
| LOUIS: | // he has to go through explaining that yes, I Dinesh D'Souza was flippant with the law and I thought that, you know – |
| DENISE: | // Okay. |
| LOUIS: | // I could just do this. (UI) – |
| DENISE: | Okay, and then he goes to jail. |
| LOUIS: | No, he doesn't go to jail. I'm not gonna argue with you about him going to jail. If he goes to jail, I guess he goes to jail. But I'm telling you he's not gonna go to jail. And that's – you're just asking me what's going on and I'm telling you. |
| DENISE: | Okay. |
| LOUIS: | Now you have a legal opinion – or an opinion about it, then that's your opinion. But, I'm just telling you how it actually is going, and how I think it will go. |
| DENISE: | Okay. Just like how you thought many things would go, and they don't do that, right? |
| LOUIS: | I guess.<br><br>[PAUSE FOR 11 SECONDS] |
| DENISE: | And what are you gonna do about all that money he, uh – what if they find out about all that money he paid you? |
| LOUIS: | He didn't pay me; the movie paid me. |
| DENISE: | The movie paid you without taxes. |
| LOUIS: | There was no without taxes. I don't have to file a tax return until April. |
| DENISE: | No, I'm talking last year. |

| | |
|---|---|
| LOUIS: | He didn't pay me any money Louis! |
| DENISE: | You (ST) were working for him. |
| LOUIS: | I was supposed to be working for him. I was supposed to get a salary. I never did. I only got money sometimes. |
| DENISE: | Okay, but that's – do you understand that – |
| LOUIS: | (UI) -- nobody's doing anything about that. I have no idea how – it's funny because I have no idea how much salary it is I got. So I – |
| DENISE: | You deposited money into a – into your bank account. |
| LOUIS: | And I would have absolutely no idea how much money that is. I don't know if that was – |
| DENISE: | Right. |
| LOUIS: | him loaning me money in order to give me salary later or what. I have no idea. But that's the – I have no problem telling anybody exactly what happened. Nobody's come forward with anything for that. |
| DENISE: | Right, but you're – alright. [PAUSE FOR 6 SECONDS] Did you file the tax return this past year? |
| LOUIS: | No. |
| DENISE: | No? Okay. [PAUSE FOR 4 SECONDS] Did he file a tax return as you as, uh, an employee? |
| LOUIS: | No. |
| DENISE: | No. Okay. You know how Al Capone went to jail? |
| LOUIS: | Yeah, because they were looking to lock him up for something. |
| DENISE: | // Right. |
| LOUIS: | // But I should mention that to him. |
| DENISE: | For who? |
| | For Dinesh. |
| LOUIS: | [BACKGROUND NOISE FOR 38 SECONDS] |
| DENISE: | So what does Brafman think of this wonderful plan? |
| | He's the one who suggested a not-guilty plea. |

[BACKGROUND NOISE FOR 49 SECONDS]

LOUIS:

So, how you been Louie?

DENISE:

I've been fine. I have to stop by (UI).

LOUIS:

For what?

DENISE:

Food.

LOUIS:

What kind of food?

DENISE:

(UI) and cheese.

That's it? (UI) and I would've gone to Burger King and stuff.

LOUIS:

[BACKGROUND NOISE FOR 9 SECONDS]

DENISE:

I have some – meet another, um, physicist that's also an astrologer (IA).

LOUIS:

So what she tell you about astrology?

DENISE:

She's an astrologer and a psychic (IA). She told me (UI) is bluish green. She's awesome.

LOUIS:

(UI), that's it. I never told anybody about anything –

No, I mean we didn't even get into that. I was more interested in the, uh, analytical psychology. [PAUSE FOR 12 SECONDS] I have never met anybody so eccentric…and out of place.

[BACKGROUND NOISE FOR 41 SECONDS]

DENISE:

So do – does the prosecution get to choose what Judge, um, he gets?

LOUIS:

I don't think it (IA).

DENISE:

It's like, a luck of the draw thing?

LOUIS:

Yeah.

DENISE:

Yeah. So if it does go to trial – so he gets a shitty Judge and it goes to trial, what is Brafman argument gonna be?

LOUIS:

I just told you.

DENISE:

That nobody else got in – got in trouble for this?

LOUIS:

No. He's just gonna tell the story and if the jury thinks that –

DENISE:

That's gonna be an intent issue you're saying?

| | |
|---|---|
| LOUIS: | Yeah. If the jury thinks he should go to jail – |
| DENISE: | You said a jury, or a… |
| LOUIS: | Jury. |
| DENISE: | Oh. |
| LOUIS: | [PAUSE FOR 12 SECONDS] Hopefully he'll just plead guilty and get a good Judge. |
| DENISE: | Just get a year or two (2). |
| LOUIS: | No; get no time. The whole point of a good Judge is that the Judge doesn't send him to jail. He can only get up to fourteen (14) months anyway. And that's if they include wire fraud. |
| DENISE: | What's wire fraud? |
| LOUIS: | It's something they tack on to every single thing because in order to any transaction, you have to go through the wires. So that – like (UI). Otherwise it's eight (8) to ten (10) maximum. |
| | [BACKGROUND NOISE FOR 26 SECONDS] |
| DENISE: | I think there's one person that can talk himself out of this PR disaster. |
| LOUIS: | Who? |
| DENISE: | Bill Clinton. |
| LOUIS: | And me. |
| DENISE: | No. |
| LOUIS: | (IA)? |
| | You're not likeable. |
| | [BACKGROUND NOISE FOR 1 MINUTE 53 SECONDS] |
| DENISE: | You didn't take that five thousand (5,000) out of the bank account yet. |
| LOUIS: | Yeah, I know. I'm gonna (UI). It's not five thousand (5,000) (IA). |
| | Whatever it was. |
| | [BACKGROUND NOISE FOR 1 MINUTE 18 SECONDS] |
| DENISE: | Can you believe that in society people that preach the stand-standards – or set the standards should be held to those most stringent standards? |

LOUIS:        Yes.

DENISE:       Okay. So then how are you arguing what you're arguing?

LOUIS:        Because I don't – I think he is being set to those stringent standards,

DENISE:       Which would be the maximum penalty.

LOUIS:        He is being – he is actually (UI) the maximum for the crime (UI). Law is not just the law, it's also case law. What do you want?  Me to like advocate him going to jail?

DENISE:       No, I mean –

LOUIS:        Is that what you would like for me to tell you?

DENISE:       What does your sense of fairness tell you?

LOUIS:        My sense of fairness tells me he's getting hanged for – to – he's (ST) getting hung out to dry. And jail shouldn't be a part of it.

DENISE:       Why not?

LOUIS:        Because it doesn't have anything to do with the crime he committed.

DENISE:       But it's a crime. Jail is a punishment for a crime.

LOUIS:        Right. There's also other (IA).

                      [BACKGROUND NOISE FOR 38 SECONDS]

DENISE:       When will you be in New (ST) York next?

LOUIS:        Uh…

DENISE:       How long would you say; in a ballpark?

LOUIS:
DENISE:       (IA).

              Huh?
LOUIS:        (IA).

DENISE:       (UI).

LOUIS:        (IA) lawyers letting you off? After a month?

DENISE:       Do you want me to come?

              I mean, I really want you to come Louis, but I'm also really kinda scared of you being there; the only reason being that I love you, and I care for you, and I don't want problems. And I think it's a very dangerous

| | |
|---|---|
| LOUIS: | situation. |
| DENISE: | What; the doormen? |
| LOUIS: | Yeah; with the doormen, with the apartment, with the cops…and I can't afford anything (IA) right now – anything. I can't afford to pay much of anything, but more than – plus any more bad publicity. |
| DENISE: | How long does Dinesh intend on explaining who you are? |
| LOUIS: | What do you mean? |
| DENISE: | Well… |
| LOUIS: | Everybody knows who I am. |
| DENISE: | It's a Pandora's box. No, they don't. |
| LOUIS: | What do you mean? |
| DENISE: | They don't know that you're still with me. |
| LOUIS: | You mean they never knew I was married? |
| DENISE: | Yeah, they don't know that you're still married to me. You don't think that the opposing side will do their research? |
| LOUIS: | Well they clearly have it. Nobody's got an issue with me and you. |
| DENISE: | Because it's not an issue yet. But if you start going after the U.S. Attorney's Office, it quickly could become one and they can make it one very quickly. |
| LOUIS: | And what could be the issue with me? How was that even (UI)? |
| DENISE: | That you and I are still together, and Dinesh is living with a married woman, and that – I mean, there's about a million (1,000,000) different, uh, ways that this could further damage his publicity. |
| LOUIS: | I don't think that's gonna happen. I just don't think they're gonna go near me. |
| DENISE: | This is where you're very ignorant. Looks (ST) like you have – |
| LOUIS: | // Nobody seems to be interested in me. |
| DENISE: | you think you could just go after -- try to make the U.S. Attorney's Office look bad? |
| LOUIS: | Sure, since the facts are there. |

DENISE: // (UI). Oh (ST) but there's also a lot more facts if you're talking about character.

LOUIS: // Right. But this has nothing to do with what he did.

DENISE: Right, it (ST) does because you are a party in this, and so am I.

LOUIS: // Right. But this has nothing to do with it.

DENISE: So am I.

LOUIS: // What does that have to do with his intent to do any fraud?

DENISE: It doesn't matter. If you're going to get – go and start a publicity war, the publicity war will – can spread anywhere. That's publicity. It's journalism. You're failing to recognize that one thing will uncover another. You think that the spotlight just gonna be nice and focused. That's all it will shine on. I think you're very – very wrong about that. You're naïve to think so. What do you think investigative reporting is? "Who is this person? Who's this other person? What's their relationship?"

LOUIS: Well, how come they didn't do any of that the first (1st) time around?

DENISE: They tried.

LOUIS: It's not that hard to know whom I'm married to; Louis.

DENISE: Uh huh.

LOUIS: Okay, it's a matter of public record. The point is, nobody ever cared.

DENISE: Yes, but this time they will.

LOUIS: // Why?

DENISE: I mean, because it's getting dug up again. I'm a player here.

LOUIS: I have already told Dinesh that I don't want your name mentioned at all. So if it gets mentioned, it's gonna get mentioned by the other side.

DENISE: Right., which will absolutely (IA). And if it gets mentioned, it will be fully mentioned in court too as I testified.

LOUIS: (UI).

DENISE: Do you not think I will be called as witness?

LOUIS: Yeah.

DENISE: Of course. There you go.

| | |
|---|---|
| LOUIS: | // Well that's not right away. And the thing is, testimony and all that is a very theoretical issue. The trial wouldn't start until September. |
| DENISE: | September? |
| LOUIS: | Yeah. |
| DENISE: | Next year? |
| LOUIS: | Next year. |
| DENISE: | Why? |
| LOUIS: | That's how long it takes. Really (UI). |
| DENISE: | [PAUSE FOR 9 SECONDS] And this whole tax issue is another thing. |
| LOUIS: | Well, I'm gonna ask about tax issue, but – |
| DENISE: | I mean, remember; I told you to pay your taxes and that he needs to be paid – |
| LOUIS: | // Yeah, but what does that have to do with you? |
| DENISE: | I'm telling you that – I'm telling you to live by the letter of the law. And living by the letter of the law is not avoiding paying taxes, or like having money – |
| LOUIS: | Yeah, but Bill already knows. Bill already questioned me about the whole salary / taxes issue, I think. |
| DENISE: | What does Bill care? I mean – |
| LOUIS: | Bill's my lawyer for – |
| DENISE: | // Yeah, I understand that, but – |
| LOUIS: | // (UI) Bill is my lawyer for this case. |
| DENISE: | I get that, but Bill's not – |
| LOUIS: | He's paid separately for this case. |
| DENISE: | Right, right. I get that. But Bill is not the person that would be enforcing it. Bill can – |
| LOUIS: | // Wait, but – |
| | Bill can question you about it all till the cows come home. The fact of the matter is, is Dinesh paid you thousands of dollars, didn't have you as an employee; um, this, that or (ST) the other. It's (ST) similar to all those, uh, |

| | |
|---|---|
| DENISE: | people that get in trouble for, uh, paying illegal immigrants under the table for being their maids or whatnot. |
| LOUIS: | So what am I supposed to do about all of this? |
| DENISE: | You – he – that needs to be taken care of. |
| LOUIS: | How? |
| DENISE: | That's – well, he (ST) needs to just – he needs to file – say that he had an employee, pay the IR – pay her the IRS x percent, pay Medicare x percent – I mean, all of this stuff has to happen. |
| LOUIS: | // But he didn't really have an employee. He had a potential employee. |
| DENISE: | But he paid you money. |
| LOUIS: | Yeah, but anybody can give anybody money. That doesn't mean – |
| DENISE: | // Are you kidding me? |
| LOUIS: | // (UI) the money. |
| DENISE: | // Yeah, but then that's income for you. And so where's that income coming from? Do you understand that all of this is very – like, it's (ST) taxable. |
| LOUIS: | So what are you trying to tell me Lou? I mean I will bring this up with him I guess. |
| DENISE: | I – I'm saying that – |
| LOUIS: | But I'm not scared. I don't – |
| DENISE: | things need to be done legally. |
| LOUIS: | Right. But I don't – I'm not scared of this. |
| DENISE: | // Why? |
| LOUIS: | // I don't think anything is happening. |
| DENISE: | Really? So Dinesh D'Souza now is prosecuted for not paying his taxes. |
| LOUIS: | Why? |
| DENISE: | What do you mean why? Okay, you're saying there's a witch hunt here. |
| LOUIS: | // Nobody's even come about that. |
| DENISE: | Okay, but the thing is, is this stuff is out there. Things are getting looked |

at.

| | |
|---|---|
| LOUIS: | I guarantee you, it's – this is what I'm trying to say; they've been out there. Bill – when Bill – when this case first started, Bill and I had to talk for a very long time about this. The prosecutor – he told the prosecutor that I'm just really dumb. I don't know anything about money. And that's just |
| DENISE: | – that's how it is. And it's no problem. |
| | // Right. But charges can brought about. |
| LOUIS: | |
| DENISE: | But nobody's indicating anybody – wants to bring any charges. There's no charges (UI). |
| LOUIS: | // Right, because there's this thing right now. But there's another… |
| DENISE: | Those charges have been brought already. |
| LOUIS: | What? |
| DENISE: | They already know what they're charging me with. |
| LOUIS: | Right, but there's more. |
| DENISE: | Well, then that's his business isn't it? I mean, if you – |
| LOUIS: | That's your business too. You can't plead ignorance; "Oh, I didn't know I had to pay taxes." |
| DENISE: | No, I didn't know! I didn't know, and I still don't know. I don't get it. |
| LOUIS: | Okay. Well, you have to pay taxes on income. |
| DENISE: | Well, you can go testify against me in court too Louie. Be my guest. |
| LOUIS: | // I don't want to testify. I'm just telling you to…you know…don't break the law. |
| | Otherwise, what will happen? |
| | Things like this. |

[BACKGROUND NOISE FOR 39 SECONDS]

| | |
|---|---|
| DENISE: | |
| LOUIS: | So, the minute he's indicted, he's gonna plead not-guilty and then just watch them start PR thing. That's the plan. |
| DENISE: | That's the plan. |
| LOUIS: | Then wait to see what Judge happens. And when does that find out? |
| DENISE: | December. |

LOUIS:          In December. And then make a decision accordingly from there.

DENISE:         I hope you're not mole-ing all this though.

LOUIS:          Mole-ing to who?

DENISE:         To the other side.

LOUIS:          (chuckle) No, I –

DENISE:         'Cause that'd be really gay if you did that.

LOUIS:          I'm the rat.

                That'd be really gay if you did that.

DENISE:         What could they do with that information? Nothing. It wouldn't change anything.

LOUIS:                   [BACKGROUND NOISE FOR 30 SECONDS]

DENISE:         Wanna eat dinner?

LOUIS:          Okay.

DENISE:         [PAUSE FOR 8 SECONDS] Just wait.

                I don't know what's happening.

                Just wait.

                         [BACKGROUND NOISE FOR 2 MINUTES, 15 SECONDS]

LOUIS:

DENISE:         I tell you – well, you're up for a really good time. You really think everything's just fun.

LOUIS:          With…

DENISE:         Since you got me from the airport.

LOUIS:          What's wrong?

DENISE:         Like, you're being miserable.

LOUIS:          I'm not being miserable.

DENISE:         // Yes you are.

                // I'm telling you what was happening.

LOUIS:
                Yeah, in a really mean, miserable way. You're trying to tell me all kinds of

DENISE:                   things that can happen.

LOUIS:                    You're playing a violin. [PAUSE FOR 15 SECONDS] Alright, it's food time.

                          (IA).

                          You can pay – pay inside.

                                        [END OF CONVERSATION]