E5k0dsop

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              14 CR 34

5    DINESH D'SOUZA,

6              Defendant.

7    ------------------------------x

8                                        New York, N.Y.
                                         May 20, 2014
9                                        9:00 A.M.

10

11

     Before:
12
                       HON. RICHARD M. BERMAN,
13
                                        District Judge
14

15                      APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     CARRIE COHEN
18   PAUL KRIEGER
     Assistant United States Attorneys
19
     BENJAMIN BRAFMAN
20   ALEX SPIRO
     Attorneys for Defendant
21

22

23

24

25

E5k0dsop

```
 1                 (In open court; defendant present)

 2                 THE COURT:  Good morning, everybody, please be seated.

 3            So just a few preliminaries.

 4            For one, Mr. Brafman, I have been handed a document

 5      called an Advice Of Rights form which is signed both by

 6      yourself and Mr. D'Souza.  And it advises a defendant of

 7      certain rights that they are giving up by entering a guilty

 8      plea agreement.  And it states, among other things, that both

 9      you and he believe that there are not any meritorious defenses

10      to the count, or counts, to which he intends to plead guilty.

11                 So my question is whether you and he, before signing

12      it, had an adequate opportunity to go through that advice of

13      rights form.

14            MR. BRAFMAN:  Yes.  And we have discussed, both his

15      rights and whatever defenses might be available, for several

16      weeks now, extensively.

17            THE COURT:  Mr. D'Souza, you went through that

18      carefully, that Advice Of Rights form with Mr. Brafman before

19      you signed it?

20            THE DEFENDANT:  Yes, I did.

21            THE COURT:  Thank you.

22            I have also reviewed a copy of the letter agreement

23      which is a plea agreement dated, on the first page, May 19th,

24      2014, and signed by both Mr. Brafman and Mr. D'Souza, today --

25      May 19 is correct.  And today.
```

E5k0dsop

1          And did you each, Mr. Brafman first, have an

2     opportunity to discuss, in detail, this plea agreement between

3     the government and the defense?

4          MR. BRAFMAN:  Yes, your Honor.  We received a copy

5     yesterday, and we spent a fair amount of time explaining it and

6     discussing it with Mr. D'Souza, signed a copy last night, and

7     we signed an original copy this morning.

8          You should have a copy dated May 20 or May 19.

9          THE COURT:  I have one dated May 19, and I have one

10    also -- I guess the original, then, is the one dated May 20,

11    2014.

12         I do have both copies, thank you.

13         MR. BRAFMAN:  Yes, sir.

14         THE COURT:  Thank you.

15         And Mr. D'Souza, you went over that agreement, the

16    plea agreement, carefully with Mr. Brafman before you signed it

17    this morning?

18         THE DEFENDANT:  Yes, I did.

19         THE COURT:  Thank you very much.

20         So, Ms. Cohen, the text of both those plea agreements,

21    are they exactly the same?

22         MS. COHEN:  Yes, they are, your Honor.

23         THE COURT:  Thank you.

24         So it's clear from these documents that Mr. D'Souza

25    wishes to change his plea to the indictment in this case,

E5k0dsop

1   particularly with respect to count one of the indictment, from

2   not guilty to guilty.  And is my understanding correct, Mr.

3   Brafman, and is that the purpose of today's proceeding?

4          MR. BRAFMAN:  Yes, your Honor.

5          Preliminarily, I wanted to thank you, sir, for all of

6   the time you have spent dealing with the complicated legal

7   issues that had to be resolved.  But the defendant, this

8   morning, has authorized me to withdraw his previously entered

9   plea of not guilty and enter a plea of guilty to count one of

10  the indictment in satisfaction of the entire indictment, with

11  the understanding that count one of the indictment would be

12  dismissed and that count two will be dismissed at the time of

13  sentence.

14         THE COURT:  Count two.  Thank you.  I appreciate your

15  remarks.

16         So, let's ask Christine Murray to swear in Mr. D'Souza

17  at this time.

18         THE DEPUTY CLERK:  Sir, if you can stand.  Thank you.

19  And raise your right hand, please.

20         (Defendant sworn)

21         THE DEPUTY CLERK:  Thank you, sir, you may be seated.

22         THE COURT:  Mr. D'Souza, you should know that now you

23  are under oath.  Your answers to my questions must be truthful

24  and could subject you to the criminal penalties of perjury or

25  making a false statement if you were to not answer truthfully,

E5k0dsop

1   you realize that?

2                THE DEFENDANT:  I do.

3                THE COURT:  So before I accept your guilty plea, as we

4   have been discussing preliminarily, I'm going to ask you a

5   series of questions.  And the purpose of these questions is to

6   establish that you, in fact, wish to plead guilty, that you do

7   so voluntarily and knowingly, and because you are guilty, and

8   also to establish just what rights you will be giving up by

9   pleading guilty.  So if you don't understand any of my

10  questions, or if at any time you wish to consult with Mr.

11  Brafman for any reason, please say so and I'll give you as much

12  time as you need to consult with your attorney.

13                It's essential to a valid plea that you understand

14  every question before you answer.

15                Can we start by asking you, please, to state your full

16  name.

17                THE DEFENDANT:  It's Dinesh D'Souza.

18                THE COURT:  And you are, how old?

19                THE DEFENDANT:  I'm 53.

20                THE COURT:  And you're a U.S. citizen?

21                THE DEFENDANT:  Yes.

22                THE COURT:  And how far did you go in school?

23                THE DEFENDANT:  I have a BA from Dartmouth College.

24                THE COURT:  And are you now, or have you recently

25  been, under the care, first of all, of a medical doctor?

E5k0dsop

1              THE DEFENDANT:  No.

2              THE COURT:  And how about a mental health physician?

3              THE DEFENDANT:  No.

4              THE COURT:  And how is your health today, generally

5     speaking?

6              THE DEFENDANT:  Just fine.

7              THE COURT:  And your mental health?

8              THE DEFENDANT:  No issues.

9              THE COURT:  And have you ever been addicted to drugs

10    or to alcohol?

11             THE DEFENDANT:  No.

12             THE COURT:  Ever been hospitalized or treated for any

13    addictions?

14             THE DEFENDANT:  No.

15             THE COURT:  And have you taken any drugs or medicine

16    or pills, or drunk any alcoholic beverages in the past 24

17    hours?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Nothing that might impact your answers to

20    my questions here this morning?

21             THE DEFENDANT:  Nothing.

22             THE COURT:  Again, I'm going to ask how you feel,

23    first of all, physically, today.

24             THE DEFENDANT:  I feel fine.

25             THE COURT:  And mentally?

E5k0dsop

1          THE DEFENDANT:  I'm fine, your Honor.

2          THE COURT:  And you understand what's happening in

3    this proceeding here in court today?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  So here's a question for the lawyers.

6          Do either of you have any doubts or concerns as to Mr.

7    D'Souza's competence to plead at this time.

8          Ms. Cohen?

9          THE DEFENDANT:  No, your Honor.

10         MR. BRAFMAN:  None whatsoever, your Honor.

11         THE COURT:  Nor do I.

12         Based on the record today, including Mr. D'Souza's

13   testimony, I find that he is competent to plead guilty.

14         Mr. D'Souza, have you had a full opportunity to

15   discuss all aspects of this case with your attorney, Mr.

16   Brafman?

17         THE DEFENDANT:  Yes, I have, your Honor.

18         THE COURT:  Including any possible defenses that you

19   might have to this case, in particular, count one of the

20   indictment to which you have offered to plead guilty today?

21         THE DEFENDANT:  Yes, I have.

22         THE COURT:  And are you fully satisfied with Mr.

23   Brafman's legal representation of you?

24         THE DEFENDANT:  I am.

25         THE COURT:  And are you fully satisfied with the legal

E5k0dsop

1    advice that he has given you in this matter?

2              THE DEFENDANT:  Yes, I am.

3              THE COURT:  So now I'm going to explain certain

4    Constitutional rights that you have, and pose certain questions

5    about those.

6              First question is, in that regard, you understand that

7    you have the absolute right to plead not guilty if you wish?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  And under the Constitution and laws of the

10   United States, you, if you determine to plead not guilty, you

11   would be entitled to a speedy and public trial, as you know,

12   even today, if you wanted to, by a jury on the charges

13   contained in the indictment.  You realize that?

14             THE DEFENDANT:  I do.

15             THE COURT:  And if you decided to go forward with the

16   trial, you would be presumed to be innocent at the trial.  The

17   government would have to prove that you were guilty by

18   competent evidence and beyond a reasonable doubt before you

19   could be found guilty.  And a jury would have to agree

20   unanimously that you were guilty.  And you would not have to

21   prove that you were innocent.  Do you understand those trial

22   rights that you will be giving up by pleading guilty today?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Also, at the trial if you elected to go

25   forward and have one, and at every stage of your case, you

E5k0dsop

would be entitled to be represented by an attorney, as you are

today and have been throughout these proceedings.  And if you

could not afford an attorney, one would be appointed at public

expense to represent you; do you realize that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Also during a trial, during the trial, if

you elected to have one, the witnesses for the government would

have to come to Court and testify in your presence.  Your

attorney could cross-examine the witnesses for the government,

he could object to evidence offered by the government, and he

could offer evidence and subpoena witnesses on your behalf; do

you realize that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Also at a trial, if you elected to have

one, although you would have the right to testify if you chose

to do so, you would also have the right not to testify, and no

one, including particularly the jury, could draw any inference

or suggestion of guilt from the fact that you did not testify,

if that's what you chose to do.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And even now, this morning, as you're

entering this guilty plea, you still have the right to change

your mind and to plead not guilty and to go to trial on the

charges set forth in the indictment; is that your

understanding?

E5k0dsop

1          THE DEFENDANT:  Yes, it is.

2          THE COURT:  If you do plead guilty this morning and if

3     I accept the guilty plea, then you will be giving up your right

4     to have a trial, and the other rights I have been discussing

5     with you, and there will be no trial, but I will still enter a

6     judgment of guilty against you.  Do you realize that?

7          THE DEFENDANT:  Yes, I do.

8          THE COURT:  And I will, thereafter, not today,

9     sometime -- we'll pick a date at the end of this proceeding --

10    on the basis of your guilty plea after I have considered what's

11    called a presentence investigation report that is prepared in

12    the normal course by the probation department, and any

13    submissions I might get from Mr. Brafman and from Ms. Cohen,

14    prior to sentencing.  Do you realize that?

15         THE DEFENDANT:  I do.

16         THE COURT:  So, Mr. D'Souza, have you received and

17    reviewed a copy of the indictment in this case, which contains

18    the charges against you?

19         THE DEFENDANT:  Yes, I have.

20         THE COURT:  And have you discussed, fully, with Mr.

21    Brafman, those charges in the indictment, in particular, count

22    one to which you intend to plead guilty this morning?

23         THE DEFENDANT:  Yes, your Honor, I have.

24         THE COURT:  And, again, I know I have asked this

25    before, but it is important to underscore.  Are you fully

E5k0dsop

1    satisfied with Mr. Brafman's legal representation of you in

2    this matter?

3              THE DEFENDANT:  Yes, I am.

4              THE COURT:  And are you fully satisfied with the legal

5    advice that he has given you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  So I'm just going to briefly summarize

8    count one.  Of course the indictment in the case speaks for

9    itself, and it is incorporated by reference.  But it says in

10   count one, in sum and substance, that in or about August 2012,

11   in the Southern District of New York, the defendant, Mr.

12   D'Souza willfully and knowingly made, and caused to be made,

13   contributions of money, aggregating more than $10,000 during

14   the 2012 calendar year, in the names of other people, to the

15   campaign of a candidate for -- a New York candidate for United

16   States Senate, to wit, Mr. D'Souza reimbursed others with whom

17   he was associated, and who he had directed to contribute a

18   total of $20,000 to the campaign of Ms. Wendy Long.

19             Ms. Cohen, did you want to add anything to that

20   summary of count one?

21             MS. COHEN:  No, your Honor.

22             THE COURT:  Mr. Brafman?

23             MR. BRAFMAN:  No, sir.

24             THE COURT:  Okay.  So now if we could discuss for a

25   moment, Mr. D'Souza, the maximum possible sentence you could

E5k0dsop

1    receive for this crime.  This does not mean that you will

2    receive the maximum possible sentence, but it is important that

3    you know what the maximums are before we have a knowing and

4    voluntary plea.

5           So, first of all, do you understand that the maximum

6    term of imprisonment that is possible is two years of

7    incarceration?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  And do you understand that the maximum

10   term of supervised release, which is the period of supervision

11   by the probation department that follows any incarceration, the

12   maximum term of supervised release in this case is three years?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  And do you understand that the maximum

15   fine that could be imposed upon you in this matter is the

16   greatest of $250,000, or twice the gross pecuniary gain derived

17   from the offense, or twice the gross pecuniary loss to persons

18   other than yourself resulting from the offense.

19          Do you realize that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  And do you know that, in any event, there

22   is a 100-dollar special assessment that is mandatory and will

23   be imposed upon you?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  And do you understand that a felony

E5k0dsop

adjudication, which this would be, count one of the indictment

is a felony, may result in your being deprived of certain

rights that you would otherwise have, including the right to

vote, the right to hold public office, the right to serve on a

jury, and the right to possess a firearm.

   Do you understand that?

   THE DEFENDANT:  Yes, I do.

   THE COURT:  Ms. Cohen, I take it this is not a

situation where restitution will come into play; is that right?

   MS. COHEN:  That's correct, your Honor.

   THE COURT:  And do you understand, Mr. D'Souza, that

we have no parole in the federal system, which is where we are

today.

   THE DEFENDANT:  I do.

   THE COURT:  And do you understand that -- I mentioned

this very briefly a minute or so ago.  But in addition to any

incarceration, you could be subject to a period of what we call

*supervised release* following any incarceration; do you

understand that?

   THE DEFENDANT:  Yes, I do.

   THE COURT:  And do you know that with respect to

supervised release, there might very well be terms and -- if it

were imposed -- there might very well be terms and conditions

attached.  And if you fail to comply with those terms and

conditions, you could, following a hearing, be imprisoned.  Do

E5k0dsop

1    you realize that?

2                THE DEFENDANT:  Yes, I do.

3                THE COURT:  And do you understand that if there were

4    such a hearing, that is to say a hearing as to whether you were

5    in compliance with the terms and conditions of supervised

6    release, that would be a nonjury proceeding simply before me as

7    the sentencing judge?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Are you serving any other sentences, State

10   or federal, or being prosecuted in any other courts for any

11   other crimes at this time?

12               THE DEFENDANT:  No.

13               THE COURT:  And I'm sure that Mr. Brafman has, and

14   will going forward, discuss sentencing with you.  I just want

15   to make a point about sentencing, which is that the United

16   States Sentencing Guidelines -- I'm sure -- well, I'm not sure

17   everybody is aware of it.  But it is common knowledge that they

18   are no longer mandatory and, instead, the sentencing courts in

19   trying to come up with a reasonable sentence, review the

20   factors of a statute called 18 United States Code

21   Section 3553(a).  And I just want to touch upon those factors

22   here this morning.

23               They include, and I will consider, the nature and the

24   circumstances of the offense or crime, as well as the history

25   and characteristics of the defendant.  Usually, as I said

E5k0dsop

1    before as set forth in the presentence investigation report,

2    that's done, and any submissions I may get from Mr. Brafman and

3    from Ms. Cohen.  And we try to accomplish certain objectives in

4    sentencing, which include these:  One, is to reflect the

5    seriousness of the offense; another is to promote respect for

6    the law; another is to provide a just punishment; another is to

7    afford adequate deterrence to criminal conduct; another is to

8    protect the public from further crimes; and another is, where

9    needed, to provide the defendant with educational or vocational

10   training or medical care or other correctional treatment in the

11   most effective manner.

12           And in doing all of that, that is to say in reviewing

13   all of those criteria and factors, the sentencing courts look

14   at the kinds of sentences that are available, the kind of

15   sentence and the sentencing range established in the United

16   States Sentencing Guidelines, even though, as I say, those are

17   no longer mandatory.  We look at any policy statements issued

18   by the United States Sentencing Commission that may apply to

19   your case.  We seek to avoid unwarranted sentencing, sentence

20   disparities among similarly-situated defendants.  And in

21   appropriate cases, of which I don't believe this is one, as Ms.

22   Cohen has said, to provide for restitution.

23           Mr. Brafman, have you had a chance to discuss, even

24   preliminarily, sentencing with Mr. D'Souza?

25           MR. BRAFMAN:  Yes, sir.

E5k0dsop

1          THE COURT:  And do you realize, Mr. D'Souza, that even

2    if you don't like the sentence that I impose, you would not,

3    for that reason alone, be able to withdraw today's guilty plea.

4    Do you understand that?

5          THE DEFENDANT:  Yes, your Honor, I do.

6          THE COURT:  So if I could turn for just a moment to

7    the plea agreement in this case.

8          Now, this is a document between the government and the

9    defense.  It speaks for itself, in its entirety.  There are

10   just one, or two, or three provisions that I want to highlight

11   for the purposes of today's sentencing proceedings.

12          So, first of all -- and I'll ask these questions both

13   of counsel and of Mr. D'Souza.

14          There is a provision in the plea agreement that says

15   the sentence to be imposed upon Mr. D'Souza is determined

16   solely by the Court.

17          Now, Ms. Cohen, do you agree with that principle?

18          MS. COHEN:  Yes, your Honor.

19          THE COURT:  And Mr. Brafman?

20          MR. BRAFMAN:  Yes, sir.

21          THE COURT:  Mr. D'Souza, do you understand that?

22          THE DEFENDANT:  I do.

23          THE COURT:  Then do you think, Mr. D'Souza, that you

24   fully understand the consequences of pleading guilty today?

25          THE DEFENDANT:  Yes, I do.

E5k0dsop

1           THE COURT:  Has anybody threatened you, or in any way

2      forced you, to plead guilty?

3           THE DEFENDANT:  No.

4           THE COURT:  Including any attorneys.

5           THE DEFENDANT:  No.

6           THE COURT:  So let's go back for a moment to the plea

7      agreement.  It's dated on the first page May 19, and on the

8      last page -- and the document that I am relying on is the one

9      that was signed this morning, and signed on May 20, 2014.  We

10     can find, among others, the following provisions.  And again,

11     I'm going to pose these questions of counsel and of Mr.

12     D'Souza.

13          So there is a provision here, Ms. Cohen, that says

14     that the parties agree that the so-called offense level is 12,

15     the criminal, what we call the criminal history category is  1,

16     and the guideline range in this matter is 10 to 16 months of

17     incarceration.  Is that your understanding?

18          MS. COHEN:  Yes, your Honor.

19          THE COURT:  And Mr. Brafman, is that yours?

20          MR. BRAFMAN:  Yes, sir.

21          THE COURT:  Mr. D'Souza, you are aware of that?

22          THE DEFENDANT:  Yes, I am.

23          THE COURT:  There is also a provision that says Mr.

24     D'Souza agrees that he will not seek a two-level reduction in

25     the, what we call the stipulated offense level, for reasons of

E5k0dsop

1   acceptance of responsibility.  So he will not be seeking such a

2   reduction.

3              Ms. Cohen, do you understand that to be the case?

4              MS. COHEN:  Yes, your Honor.

5              THE COURT:  And Mr. Brafman, do you?

6              MR. BRAFMAN:  Yes, your Honor.

7         I just wanted the record the reflect that we have

8   agreed that the defendant will not seek a two-level adjustment

9   of the guideline level for acceptance of responsibility, not

10  seek it from the government or from the Court or probation.  It

11  is understood that the fact that the defendant has agreed to

12  plead guilty will be an issue that we are able to brief for the

13  Court, to the extent that your Honor wants to consider the fact

14  that he did plead guilty, in determining what the appropriate

15  sentence should be.

16             THE COURT:  I understand that.

17             And Mr. D'Souza, is that your understanding as well?

18             THE DEFENDANT:  Yes, it is.

19             THE COURT:  There is also a provision in the plea

20  agreement that says -- first it says, or one part of it says

21  that the parties agree that neither an upward -- what we call

22  an upward -- nor downward departure is warranted.  And neither

23  party would seek such a departure.  But it goes to say that the

24  parties agree -- and this may be what you are referring to, Mr.

25  Brafman, that either party may seek a sentence outside of the

E5k0dsop

1   stipulated guideline range, based on the factors that I

2   enumerated a minute or so ago before, under 18 United States

3   Code Section 3553(a).

4          Ms. Cohen, is it your understanding that that is -- is

5   that a correct summary of those provisions of the plea

6   agreement?

7          MS. COHEN:  Correct.  And I believe those were the

8   sections of the guidelines that the defense counsel is

9   referring to regarding arguing his plea should count towards

10  those factors.

11         THE COURT:  Mr. Brafman, did I get that right?

12         MR. BRAFMAN:  Yes, sir.  We have the ability to bring

13  factors to the Court under 3553, and request an outside

14  guideline range, but we don't have the right to challenge the

15  computation of the guidelines.

16         THE COURT:  Is that your understanding, as well, Mr.

17  D'Souza?

18         THE DEFENDANT:  Yes, your Honor, it is.

19         THE COURT:  Okay.  And then finally from my

20  perspective in terms of the plea agreement, I do want to talk

21  about a waiver of appeal rights.

22         There is a provision in this plea agreement which says

23  that there is a waiver of appeal rights.  And, in fact, the

24  defendant agrees not to file a direct appeal.  It also says

25  that he waives any rights to bring what's called a collateral

E5k0dsop

1    challenge, so called habeas challenges, including but not

2    limited to an application under 28 United States Code Sections

3    2255 and/or 2241.  And it also says that Mr. D'Souza waives the

4    right to seek a sentence modification under a section of the

5    Code, 18 United States Code Section 3582(c).  And that these

6    waivers apply if the sentence is either within or below the

7    stipulated guideline range, which we identified before as 10 to

8    16 months of incarceration.

9              Ms. Cohen, is that a correct summary of the waiver of

10   appeal rights in this case?

11             MS. COHEN:  Yes, your Honor.

12             THE COURT:  And Mr. Brafman, do you think that, too?

13             MR. BRAFMAN:  Yes, sir.

14             THE COURT:  Mr. D'Souza, are you aware of the fact

15   that you are waiving your rights to appeal in the manner I have

16   just described?

17             THE DEFENDANT:  Yes, I am.

18             THE COURT:  And, Mr. D'Souza, apart from what is

19   contained in the plea agreement, has anybody made any promise

20   or inducement to cause you to plead guilty today?

21             THE DEFENDANT:  No.

22             THE COURT:  Has anybody made a promise to you as to

23   what sentence you will receive in this case?

24             THE DEFENDANT:  No.

25             THE COURT:  Including any attorneys?

E5k0dsop

1          THE DEFENDANT:  No.

2          THE COURT:  So I turn to you, Ms. Cohen, and ask you

3    to please summarize for us what you believe the government

4    would be able to prove in terms of evidence if this case were

5    to go to trial, rather than being resolved in this plea

6    allocution here this morning.

7          MS. COHEN:  Your Honor, the government would be able

8    to prove at trial beyond a reasonable doubt that the defendant

9    is guilty as charged in count one of the indictment.  The proof

10   at trial would consist of testimony by the candidate herself,

11   Wendy Long, regarding the individual donation campaign limit of

12   $5,000 per individual, or $10,000 for a married couple, as long

13   as they both agreed to allocate it five thousand and five

14   thousand.  She would testify that she informed the defendant of

15   those individual donations.

16          There would be e-mails and other documents showing

17   that the defendant was aware of that limit, that he e-mailed

18   back to Ms. Long acknowledging his understanding of that

19   individual donation limit.

20          There would be testimony by the individuals whom he

21   asked to make the illegal conduit contributions through.  That

22   is Tyler Vawser, an individual that worked for the defendant

23   both when he was President of King's College, which is where he

24   worked at the time of the offense, as well as worked for him

25   separately scheduling his engagements.

1          There would also be testimony by Denise Joseph --

2          THE COURT:  Tyler Vawser and his wife, as well?  Or

3     no.

4          MS. COHEN:  Yes, your Honor.

5          With respect to Tyler Vawser, Tyler Vawser would

6     testify at trial that the defendant asked him to make a

7     donation to the Wendy Long campaign.  The amount of that

8     donation was $10,000.  That he made that donation on behalf of

9     himself and his wife.  That the defendant reimbursed him,

10    either that day or the next day as he promised he would do when

11    he asked him to make the contribution.

12         The testimony at trial would also show that the time

13    the defendant asked Mr. Vawser to make that donation, that the

14    defendant knew what he was doing was wrong.

15         The defendant, when he asked Tyler Vawser to make that

16    donation, Tyler Vawser immediately asked the defendant if it

17    was okay to make the donation, and the defendant told him to

18    not worry about it.  Words to the effect of you support

19    Ms. Long, you know her, that's what you can tell anyone who

20    asks about it.

21         The evidence at trial would also show, through

22    testimony of Denise Joseph, that the defendant, that same day

23    as he asked Tyler Vawser to make the illegal donation, also

24    asked Ms. Joseph to make a 10,000 donation on behalf of herself

25    and her spouse at the time.  That she communicated with her

E5k0dsop

spouse, Dr. Joseph, about the donation.  That he wrote a check
to the Long campaign either that day or the next day for
$10,000.  That the defendant, again as he promised to do when
he asked her to make the donation, he paid her back the
$10,000.

        Both of the reimbursements for donations were made in
cash by the defendant, so that he handed $10,000 in cash both
to Tyler Vawser and to Denise Joseph.  They would testify about
that at trial.

        In addition, there would be bank records showing the
deposit of that money by Tyler Vawser and Denise Joseph on or
about the day they also wrote the checks to the Long campaign.

        In addition, at trial, Ms. Long would testify that she
asked the defendant specifically about these two donations, the
donations by Tyler Vawser and Denise Joseph and their
respective spouses.  And that, initially, her concerns were
centered around the Josephs' donation.  And that the defendant
told her, in sum or substance, not to worry about it, that
there was nothing wrong with the donations.  But that, later
after the election, much after the election, that Wendy Long
again pressed the defendant.  And this time about both
donations, the Vawser donation and Josephs' donations.  And
during that discussion, the defendant admitted that he had
reimbursed the both of them for their donations, but told Wendy
Long, who expressed her concern, that he had done that, and he

E5k0dsop

1    told Wendy Long that she shouldn't worry about it because she

2    had not known a thing about it.

3          Your Honor, we would also show at trial, official

4    documents bank records, the filings in the case, we would also

5    present proof obviously on count two of the indictment, and we

6    are confident that, at a trial, through the trial testimony,

7    and also through all of the documents that we would seek to

8    introduce, that the government would be able to show beyond a

9    reasonable doubt that the defendant here is guilty of

10   count one.

11         THE COURT:  And you would show that the -- you may

12   have said this.  That these two ten thousand dollar

13   contributions were made in or around August 2012.

14         MS. COHEN:  Correct, your Honor.  The checks were

15   August 19, 2012 by the Vassars.  And by the Josephs, on

16   August 20, 2012.  And the deposit slips reflecting the $10,000

17   cash reimbursement from the defendant to the Vassars and

18   Josephs is, I believe, on August 20 and 21, respectively.

19         THE COURT:  And by way of background, also, would you

20   establish that, in February I believe it is, of 2012, Mr.

21   D'Souza and his wife had made a -- maxed out, so to speak, by

22   making their own five and five or 10,000-dollar contribution to

23   the Wendy Long campaign.

24         MS. COHEN:  Yes, your Honor.

25         We would present evidence, both through Ms. Long and

E5k0dsop

1    through the documents themselves, which would be a check that

2    the defendant wrote to the Long campaign making a donation in

3    March of 2012 to the Long campaign in the amount of $10,000 on

4    behalf of himself and his wife.  And that he then subsequently

5    a form authorizing the campaign to split that donation equally

6    between himself and his wife, $5,000 each.

7         THE COURT:  And lastly, how would you establish venue

8    for purposes of this case?

9         MS. COHEN:  Your Honor, the defendant, when he asked

10   Mr. Vawser and Ms. Joseph to make the fraudulent donations,

11   that request was made in the Southern District of New York at

12   the King's College which is located in Manhattan.

13        THE COURT:  Thank you.

14        So turning to Mr. D'Souza, in light of the

15   presentation made by the government as to what it believes it

16   would be able to prove if this case were to proceed to trial,

17   and also in light of the questions I have asked you up until

18   now, this morning, and the answers you have given, is it your

19   wish at this time to plead guilty or not guilty to count one of

20   the indictment?

21        THE DEFENDANT:  Guilty, your Honor.

22        THE COURT:  So would you please tell me then, Mr.

23   D'Souza, in your own words, exactly what it is that you did

24   that makes you believe that you violated -- well, that you are

25   guilty of what is charged in count one of the indictment, which

E5k0dsop

1    is the making of contributions in the names of others,

2    aggregating more than $10,000 during the 2012 calendar year

3    election cycle of the Wendy Long campaign.

4                    THE DEFENDANT:  In August of 2012, in the Southern

5    District of New York, I caused two close associates to

6    contribute $10,000, each, to the U.S. Senate campaign of Wendy

7    Long, with the understanding that I would then reimburse them

8    for their contributions.  I did reimburse them.  I knew that

9    causing the campaign contribution to be made in the name of

10   another was wrong, and something the law forbids.  I deeply

11   regret my conduct.

12                   THE COURT:  And are you pleading guilty to this crime

13   because you are, in fact, guilty of it?

14                   THE DEFENDANT:  Yes, your Honor.

15                   THE COURT:  And, Ms. Cohen, do you believe that there

16   is a sufficient factual predicate for Mr. D'Souza's guilty

17   plea?

18                   MS. COHEN:  Yes, your Honor.  And I believe the

19   defendant's allocution meets all of the elements of the charged

20   crime.

21                   THE COURT:  And Mr. Brafman, do you, as well?

22                   MR. BRAFMAN:  Yes, sir.

23                   May I just add something?  We accept the recitation of

24   evidence that Ms. Cohen put on the record, the substance.  And

25   we accept the fact that the government had sufficient proof

E5k0dsop

1   beyond a reasonable doubt to convict the defendant of

2   count one, if he had proceeded to trial.  Without endorsing

3   every single word that she said.  Because I want to, in the

4   sentencing memorandum, place the defendant's conduct in

5   context, so that your Honor understands the full picture.  But

6   we don't dispute the fact that the government could prove the

7   case beyond a reasonable doubt.  And that the defendant has an

8   adequate basis to allocute.  And that he did so effectively.

9        Thank you, sir.

10       THE COURT:  Thank you.  I agree with both of you, as

11  well, that there is a sufficient factual predicate for this

12  guilty plea.  And it is the finding of this Court, in this

13  matter, United States v. Dinesh D'Souza, that the defendant is

14  fully competent and capable of entering an informed plea, that

15  he is aware of the nature of the charges against him and the

16  consequences of pleading guilty, and that the plea is a knowing

17  and voluntary plea supported by an independent basis which, in

18  fact, supports each of the essential elements of the crime

19  charged in count one of the indictment.

20       It is the further finding of the Court that Mr.

21  D'Souza is also fully aware of the potential consequences that

22  result from waiving his appeal rights, and that he has done so

23  both voluntarily and knowingly within the confines of the plea

24  agreement and also, here, during the plea allocution this

25  morning.

E5k0dsop

1          Consequently, the plea is therefore accepted.  And Mr.

2     D'Souza is now adjudged guilty of the offense charged in count

3     one of the indictment.

4          Mr. Brafman, is there any reason in your opinion why I

5     should not direct that a presentence investigation report be

6     prepared?

7          MR. BRAFMAN:  No, sir.

8          THE COURT:  And do you wish to be present in

9     connection with any interview of Mr. D'Souza?

10          MR. BRAFMAN:  Yes, your Honor.

11          THE COURT:  So I hereby order that a presentence

12     investigation report be made, but that there be no interview of

13     Mr. D'Souza unless Mr. Brafman is given the opportunity to be

14     present.

15          And I say this, which we commonly say, Mr. D'Souza, it

16     is in your best interest to cooperate with the probation

17     department who prepares the presentence report, since the

18     report will be important in my decision as to what is an

19     appropriate sentence in this case.  So it's my suggestion that

20     you tell them whatever they ask, consulting of course with your

21     attorney, both the good things and not-so-good things.  Because

22     if you don't disclose something that they may ask about, and

23     they, being the probation department, find it out themselves,

24     they may say that you were not being truthful with them and

25     that would not be helpful to you.

E5k0dsop

1          You, and Mr. Brafman, and the government counsel will

2     have a right and the opportunity to examine the presentence

3     report before the sentencing date, and to file any objections

4     that you may have.

5          And so I urge you, Mr. D'Souza, to review the

6     presentence report carefully with Mr. Brafman and to discuss it

7     with him before sentencing.  If there are any mistakes in the

8     report, please point them out to him so that he can point them

9     out to me before the sentencing, and so that I don't proceed on

10    the basis of mistaken information.

11         Counsel, I was intending to set the sentencing down

12    for 11:00 a.m. on September 23, 2014, if that works for all of

13    you.

14         MS. COHEN:  Fine with the government, your Honor.

15         MR. BRAFMAN:  That's fine, Judge.  Thank you.

16         THE COURT:  And at that occasion, both Mr. D'Souza and

17    counsel will of course have the opportunity to be heard.

18         I would ask, Mr. Brafman, if you, as I'm certain you

19    will, are intending to make a written submission, if you would

20    be so kind as to file that with the clerk of court and on ECF

21    by September 1, 2014.

22         And then Ms. Cohen, if you are intending to respond to

23    that submission, if you would do so by September 8, 2014.

24         Okay.  I don't see any reason to impact the current

25    bail situation.

E5k0dsop

1           I do have to say, I have to remind everybody,

2    including Mr. D'Souza, that you need to appear of course in

3    court for sentencing at 11:00 a.m. on September 23, 2014.  And

4    that any failure to appear at that time could be a criminal

5    offense, separate crime, and could subject you to a fine and/or

6    a prison term of up to five years in addition to whatever other

7    sentence I might impose for the crime for which you just pled

8    guilty.

9           Do you understand that?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  And, Ms. Cohen, you indicated early on --

12    well, I think you did, that you would resolve any outstanding

13    other counts with respect to this indictment.  Or did you want

14    to wait to do that at sentencing.

15           MS. COHEN:  Yes, your Honor, we would do that after

16    sentencing.

17           THE COURT:  Okay.

18           Did you wish to add anything else to this proceeding?

19           MS. COHEN:  No, your Honor.

20           THE COURT:  Mr. Brafman?

21           MR. BRAFMAN:  No, your Honor.  Thank you.

22           THE COURT:  And this last question is, is the

23    government satisfied with the guilty plea allocution today?

24           MS. COHEN:  Yes, your Honor.  We believe it meets all

25    of the elements of the charged crime in count one.

E5k0dsop

1              THE COURT:  And Mr. Brafman, you, as well?

2              MR. BRAFMAN:  Yes, sir.

3              THE COURT:  Okay.  I think that concludes our work for

4     today.

5              Thank you very much, and I'll see you in September.

6              MS. COHEN:  Thank you, your Honor.

7              THE COURT:  You bet.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25