UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 Cr. 34 (RMB)

---

UNITED STATES OF AMERICA

-against-

DINESH D'SOUZA,

Defendant.

---

## REPLY SENTENCING MEMORANDUM ON BEHALF OF DINESH D'SOUZA

BRAFMAN & ASSOCIATES, P.C.
*Attorneys for Defendant*
*Dinesh D'Souza*
767 Third Avenue, 26th Floor
New York, New York 10017
(212) 750-7800

BENJAMIN BRAFMAN
MARK M. BAKER
ALEX SPIRO
    Of Counsel

## Table of Contents

Preliminary Statement ........................................... 1

Introduction ................................................... 1

I.   In Order to Avoid Unwarranted Sentencing Disparities for Similarly Situated Defendants, the Court must Avoid a Sentence of Incarceration in the Case of Dinesh D'souza ............................................... 3

    A.   *United States v. Jenny Hou & Oliver Pan,* 12 Cr. 153 (RJS) (S.D.N.Y.) ................................. 5

    B.   *United States v. Jay Odom* (N.D. Fla.). ..................... 5

    C.   *United States v. Joseph Bigica* (D.N.J.) .................... 6

    D.   *United States v. Marybeth Feiss* (S.D. Fla.) ............... 6

    E.   *United States v. Pierce O'Donnell* ......................... 6

    F.   *United States v. Christopher Tigani* (D. Del.) ............ 7

    G.   *United States v. George Tirado & Benjamin Hogan* (D. Conn.) ......... 7

    H.   *United States v. F. Harvey Whittemore* (D. Nev.) ............. 8

II.  Defendant Has Fully Accepted Responsibility for His Conduct and Neither His Pre-plea meaningful Motion Practice, Nor Anything He Has Said Subsequent to His Plea Detracts from His Acceptance of Responsibility; Nor Does it Undermine the Sincerity of His Honest Remorse ...................... 10

III. In Every Public Statement Made since His Plea, the Defendant Has Consistently Maintained That He Was Guilty of the Crime He Pleaded Guilty to and That His Conduct Was Wrong ............................... 15

Conclusion .................................................. 20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 Cr. 34 (RMB)

---

UNITED STATES OF AMERICA

-against-

DINESH D'SOUZA,

Defendant.

---

## REPLY SENTENCING MEMORANDUM ON BEHALF OF DINESH D'SOUZA

### Preliminary Statement

Dinesh D'Souza respectfully submits this reply sentencing memorandum to further assist the Court in determining an appropriate sentence. As will be apparent throughout this additional submission, Mr. D'Souza and his counsel readily accept the Defendant's guilt, but remain steadfast in our position that Defendant, though criminally culpable, should not be imprisoned.

### Introduction

Counsel for Dinesh D'Souza respectfully submit that rarely if ever has it been as important as in this case for a Sentencing Court to receive and review a Reply Sentencing Memorandum prior to imposing sentence.

To be candid, counsel were surprised to see that in their Sentencing Memorandum, the Government cavalierly treats and then distorts critical issues so important

to the Court's decision. In doing so, the Government ironically provides further support for those who maintain that this defendant has been singled out for more vigorous prosecution and now, for more severe punishment than virtually any other defendant whose crime is "similar" to that of Mr. D'Souza's, especially when his case is devoid of any element of corruption or personal greed that is at the heart of every case the Government cites.[1]

Indeed, so determined is the Government in its effort to convince your Honor to imprison Mr. D'Souza, that they supplied the Court with a list of cases in support of their argument on sentence parity, but did so in a manner that was disingenuous. When one carefully examines the facts in each and every one of the cases cited by the government in support of their sentence parity argument, it soon becomes clear that prison was imposed in each of those cases for a variety of aggravating factors that have nothing whatsoever to do with the prosecution of Mr. D'Souza.

For the convenience of the Court, we have created a chart that provides  the case relied on by the Government, and the "limited" facts from each case that the Government highlights. Counsel for Mr. D'Souza then provides the important facts about each case that completely undermine the integrity of the Governments's argument and, in fact, supports the defendant's argument that an honest sentence parity review of cases truly similar to this case requires a sentence that does not include any imprisonment.

---

[1]We also note that the Government completely ignores the cases cited by the defendant in his sentencing submission as if they do not matter.

I.   **In Order to Avoid Unwarranted Sentencing Disparities for Similarly Situated Defendants, the Court must Avoid a Sentence of Incarceration in the Case of Dinesh D'souza.**

At pages 10-13 of their Sentencing Memorandum, the Government, in pertinent part, provides the court with a list of "comparable election law cases" in which imprisonment was part of the sentence imposed. Gov's ltr at p. 10. Counsel for Mr. D'Souza respectfully suggest that the cases listed by the Government are NOT comparable to the case of Mr. D'Souza. Thus, the distinctions, we submit, are so significant that to cite those cases in support of a sentence parity argument requires a tortured logic or disregard for the integrity of the complicated process through which a sentencing court ultimately reaches a decision on the appropriate sentence to impose. The Government, in this case, has chosen to consciously omit from its submission critical facts from most of the cases they cite which make it clear that those cases are substantially distinguishable from the facts in Mr. D'Souza's prosecution.

Thus, in pertinent part, the Government, at pages 10-13, lists certain cases in which the defendants have been sentenced to prison for campaign finance violations, implicitly arguing that the Court can rely on those sentences of prison to support a prison sentence for Mr. D'Souza.

As noted, we have created the following chart which lists the name of the case cited by the Government in its Memorandum. Then, in a side by side chart, we first note the "limited" facts mentioned in the Government's submission, and then alert the Court to

additional, but very important facts about each case which demonstrate why in those cases

imprisonment may have been appropriate -- but for reasons, we submit, that have nothing

whatsoever to do with the case involving Mr. D'Souza.

After studying the chart and the cases cited, we respectfully ask that the Court

completely reject the Government's argument that sentence parity supports a prison sentence

for Mr. D'Souza. Simply put, their argument on this issue must be rejected because it is not

sound.

| Gov's Referenced Case | Gov's Limited Description | Facts Omitted by the Government |
|---|---|---|
| **A. United States v. Jenny Hou & Oliver Pan**, 12 Cr. 153 (RJS) (S.D.N.Y.) | On May 2, 2013, Hou and Pan were found guilty by a jury of straw donor fraud in connection with donations made to a Democratic candidate for New York City Mayor. Pan, a fundraiser for the candidate, was responsible for eight donors totaling approximately $8,000 in matching funds. Hou served as the candidate's , campaign manager and also was convicted for lying to federal agents and obstruction of justice. On October 10, 2013, Judge Sullivan sentenced Hou to ten months in prison and Pan to three months in prison . | Both individuals in this case were integrally involved with the campaign. Both individuals went to trial on additional charges as well. Hou was also convicted of attempted wire fraud, obstruction of justice and making of false statements. Hou, according to the AUSA "chose to lie to FBI agents and withhold information from a grand jury." **Pan was also convicted of conspiracy to commit wire fraud and attempt to commit wire fraud. Both were convicted of multiple felonies.** It was also alleged by the Government that the candidate himself was intimately involved in the wrongdoing. In the present case, there was never any allegation that the candidate (Long) was even aware of the defendant's use of straw donors. |

| | | |
|---|---|---|
| **B. United States v. Jay Odom** (N.D. Fla.) | On February 12, 2013, Odom pleaded guilty to one count of causing a presidential campaign to make a false statement to the FEC. Odom solicited ten donors who were employees of his business entities and their family members to each make the $2,300 maximum allowable contribution to a Presidential candidate's campaign committee and then used his personal funds to reimburse the contributions totaling $23,000. Odom was sentenced to six months in prison. (See Ex. B (Transcript of Sentencing)). | Odom, a "real estate developer who owned numerous companies," pleaded to a violation of 18 U.S.C. §1001(a)(2) for having made a "Materially False, Fictitious, and Fraudulent Statement to the Federal Election Commission." His conduct involved a presidential campaign and 10 donors. In contemporaneous state case in Florida, Odom had been charged with official misconduct by attempting to secure an appropriation, namely, the construction of a school under false pretenses in order to then transfer the school back to a private entity. |

| Gov's Referenced Case | Gov's Limited Description | Facts Omitted by the Government |
|---|---|---|
| **C. United States v. Joseph Bigica** (D.N.J.) | On May 9, 2012, Bigica pleaded guilty to one count of conspiring to violate the FECA by using 19 straw donors, including family members, business associates and others, to make $98,600 in illegal contributions to the campaign committee of a federal candidate (and one count of failing to pay personal income taxes). Bigica reimbursed the straw donors using checks drawn on accounts in the name of his spouse or companies he controlled. Bigica was sentenced to 60 months in prison. | Bigica's conduct included the use of nearly 20 straw donors and nearly $100,000 in illegal contributions. His company provided services to a number of government entities. Bigica used checks from both companies he controlled and his wife to reimburse the donors. **The conduct was part of an overall criminal scheme involving more than $2.5 million of tax fraud. In addition, Bigica was charged with failure to pay income tax.** |
|  |  |  |

| Gov's Referenced Case | Gov's Limited Description | Facts Omitted by the Government |
|---|---|---|
| **D. United States v. Marybeth Feiss** (S.D. Fla.) | On February 17, 2012, Feiss pleaded guilty to one count of engaging in a conspiracy to violate the FECA. Feiss, an administrative assistant to an attorney, helped the attorney organize political events and assisted with the collection of campaign contributions made at those events. Feiss also made a $2,500 contribution to a Presidential candidate's campaign committee and the attorney then reimbursed her using money from his law firm. Feiss was sentenced to six months in prison. | Feiss worked for and with an attorney to help the attorney organize political events and assisted with the collection of campaign contributions made at those events. **Feiss' firm attempted to influence the campaign in an effort to appoint specific individuals to political office to oversee the firm's business and the awarding of government contracts.** After donations were made, the firm would reimburse the donors by disguising them as "bonuses" or "miscellaneous expenses." **The total value of the fraud was over $800,000.** |
| **E. United States v. Pierce O'Donnell** | On February 4, 2011, O'Donnell pleaded guilty to a misdemeanor count of making illegal conduit contributions. O'Donnell solicited ten employees of his law firm and at least one relative to make individual contributions of $2,000 each to a Presidential candidate's campaign committee, which he then reimbursed. O'Donnell was sentenced to two months in prison. | **O'Donnell, an attorney, who had been *previously charged with a campaign violation,*** solicited ten employees of his law firm and at least one relative to make individual contributions to a presidential campaign. |

| Gov's Referenced Case | Gov's Limited Description | Facts Omitted by the Government |
|---|---|---|
| **F. United States v. Christopher Tigani** (D. Del.) | On June 9, 2011, Tigani pleaded guilty to violating the FECA by soliciting employees of his company to make $219,800 in political contributions to candidates running for various federal and state offices. Tigani used company non-payroll checks to reimburse his employees for their straw donations. Tigani was sentenced to two years in prison. | Tigani solicited employees of his family's liquor business, N.K.S.Distributors, Inc., the exclusive distributor for Anheuser-Busch products in Delaware, **to make over $200,000 in political contributions to candidates running for various federal and state offices.** In addition to using company non-payroll checks to reimburse his employees for their straw donations, Tigani also used a company debit card to pay for what appeared to be personal expenses, including clothes, shoes, groceries and possibly personal restaurant bills.  In addition to the campaign-finance violations, Tigani also pleaded to two counts of **tax fraud.** He had also volunteered his employees to work on campaigns, including making fund-raising calls, in addition to providing free beer and liquor for campaign events. He had even turned over his corporate offices for fundraising calls. All in all, following what appeared to have been favorable state land deals, the year-long **FBI investigation revealed that Tigani, a friend of the then Delaware governor, had schemed to increase his political influence in matters that affected his family liquor business by making contributions to both state and federal campaigns that exceeded legal limits.** |
| **G. United States v. George Tirado & Benjamin Hogan** (D. Conn.) | On April 19, 2013, Tirado and Hogan each pleaded guilty to one count of engaging in a conspiracy to make false statements to the FBI and to impede the FEC's enforcement of federal campaign financial laws. Tirado, Hogan, and others engaged in a scheme to direct conduit contributions to a candidate for the U.S. House of Representatives. Tirado caused two illegal $2,500 conduit contributions and Hogan recruited three conduits and reimbursed those conduits in cash. Tirado was sentenced to 26 months in prison and Hogan was sentenced to 21 months in prison. | Both Tirado and Hogan plead guilty to one count of engaging in a conspiracy to make false statements to the FBI and to impede the FEC's enforcement of federal campaign financial laws. **Their criminal conduct had the corrupt purpose of intending to influence cigarette tax legislation by stopping a bill then pending before Congress. Both worked for a tobacco company that had unfavorable legal rulings recently issued precluding them from certain business interests.** |

| Gov's Referenced Case | Gov's Limited Description | Facts Omitted by the Government |
|---|---|---|
| **H. United States v. F. Harvey Whittemore** (D. Nev.) | In May 2013, Whittemore was found guilty by a jury on three counts, including violating the FECA by causing 29 straw donations to a federal candidate for a total of $133,400. Whittemore was sentenced to 24 months in prison. See Ex. A (Transcript of Sentencing)). | The Government fortunately attaches the 188 page sentencing transcript from the case upon which they rely so heavily and draw from at great length. **Whittemore was a lobbyist and attorney.** Whittemore used more than 10 donors totaling more than $100,000. **Whittemore lied to the FBI. Whittemore went to trial and testified in his own defense after which the Government moved for a sentencing enhancement based on obstruction of justice. Whittemore was convicted of 3 felonies and his guideline calculation was level 22.** |

The point we make is hopefully obvious and compelling. The cases cited by the Government are all interesting, but largely not binding on this case for the reasons we have stressed. So too, is the Government's reliance on the quotes from Judge Hicks in the *Whittemore* case not fair comment. The criminal conduct of Whittemore may well go to the "very heart" of the electoral process but, in that case, Whittemore was an attorney and a lobbyist who was convicted of three felonies after a trial where he testified in a manner that caused the Government to seek an Obstruction of Justice enhancement. Mr. D'Souza, as your Honor well knows, was not an attorney or lobbyist and did not require the Government to proceed to trial. He did not seek to obtain anything of benefit for himself; nor did he seek to influence the candidate or any pending or prospective legislation. To the contrary, in the D'Souza case the Court is faced with no more than a criminal act borne of misguided friendship.

It is really that simple. A good man who is 53 years old , with no criminal record

and a genuine scholar, should not be sent to prison for a non-violent technical violation of the

Federal Election Law where he was not trying to obtain an advantage or any personal benefit

and where the case is devoid of any corruption whatsoever.

Indeed, for the Government even to characterize the defendant's conduct in

this case as "nefarious" (Gov's ltr. at p 6) underscores their inability or stubborn reluctance

to distinguish this defendant's conduct from the far more serious cases they refer to where

the schemes in question may well have been "evil" or "wicked," the generally accepted

definitions for "nefarious."

In this case, a good man with no criminal record asked two friends to contribute

money to a friend's campaign at a time when the campaign had no hope for success. None

of the parties had any corrupt motives or intent to get anything in return, or to, in any fashion,

seek to corrupt the campaign or influence any of the issues in play. Indeed, the candidate

herself had no knowledge whatsoever about the straw donations and the two straw donors

themselves were also acting out of friendship with no personal corrupt agenda whatsoever.

To be sure, what Mr. D'Souza did was wrong and his conduct violated the law.

He has acknowledged his criminal conduct and has accepted full responsibility for his crime.

As we have said throughout the process, we are not aware of any other case with similar

conduct in which the defendant in question was sentenced to prison. Despite the

Government's best efforts, we still remain unaware of anyone in Mr. D'Souza's positon who

was sent to prison in a case resolved by plea, where the amount was $20,000 and where the

case was devoid of corruption.

II.    **Defendant Has Fully Accepted Responsibility for His Conduct and Neither His Pre-plea Meaningful Motion Practice, Nor Anything He Has Said Subsequent to His Plea Detracts from His Acceptance of Responsibility; Nor Does it Undermine the Sincerity of His Honest Remorse.**

In further support of a unique scorched earth mind set reserved for this case, which the Government hopes will persuade your Honor to impose a prison sentence that is simply not warranted, the Government argues that the defendant delayed his plea by the filing of "frivolous" motions. Further, it claims that has undermined his plea by post-plea public statements he has made. The Government is simply wrong.

As we stated in Defendant's principal sentencing memorandum,

> Mr. D'Souza, who pleaded guilty and accepted the responsibility for his actions, is sincerely remorseful for his conduct. Initially, upon learning of the charges against him, Mr. D'Souza surrendered to law enforcement. Throughout the case, neither D'Souza nor his attorneys have ever disputed D'Souza's factual guilt, merely challenging the charges based on complex legal principles, later rejected by this Court.

> Specifically, subsequent to his indictment, Mr. . D'Souza, through his counsel, submitted motions which argued that, for reasons separate and apart of factual innocence, the case against him should not proceed. Counsel's own affidavit conceded the vast majority of the Government's case and at no time did Defendant or his counsel deny the factual allegations.

> Within 48 hours after this Court's decision on the voluminous and complicated series of motions was rendered, Mr. . D'Souza pleaded guilty before your Honor, thereupon fully allocuting to, and accepting complete responsibility for, his wrongful conduct.***

Defendant's sentencing memo at pp. 40-41.

Seeking to turn these representations against Defendant, the government -- amidst selective recollection of both the circumstances of Defendant's earlier motion practice and his public utterances thereafter -- argues that Dinesh D'Souza is not entitled to credit for acceptance of responsibility.

In submissions to the United States Attorney's Office prior to Defendant's indictment, and repeated throughout all of counsel's submissions, as well as in public statements in and out of court, Defendant has readily conceded his guilt. The Government cannot seem to get passed Defendant's refusal to be guilty *quietly* and incorrectly argues that "[t]he defendant pled guilty at the last possible moment before trial began, not because he actually accepted responsibility for his conduct, but because he was in fact guilty and he had no defense or excuse for his criminal conduct.?" Gov's ltr at pp. 7-8.

Specifically, "[a]s an initial matter, " the Government claims that

> the defendant pled guilty *five days* after the Court denied his motions, and after the Government produced 3500 material and exhibits. Accordingly, the defendant waited until he had a full opportunity to scrutinize and evaluate the entirety of the Government's intended trial evidence against him before deciding to plead guilty. That is not the hallmark of an individual who never considered contesting the underlying facts of his actions or "most assuredly accepted responsibility for his criminal conduct." (Def. Ltr. at 2) .

Gov's ltr at p. 8 (emphasis added).

The Government is wrong. In reality, the Court denied Defendant's motions on Thursday, May 15th. The next day, a Friday, as well as the following Monday there were no court proceedings. As your Honor will recall, counsel had a commitment out of state

which the court graciously allowed him to honor. Accordingly, *the very next business day* following the Court's ruling, Tuesday, May 20th, Defendant pleaded guilty. The Government's reference to *five* days, therefore, is decidedly misleading. Otherwise stated, Defendant pleaded *on the next available day* following the denial of his motions. In addition, counsel for Mr. D'Souza were in touch with prosecutors over the weekend, so they knew that defense was contemplating a plea.

The Government also suggests that the defendant's motions were without merit:

> the Government does not agree that the defendant's pretrial motions had any merit beyond providing, among other things, the defendant with a platform to make baseless allegations that he was selectively prosecuted. Indeed, the Court completely rejected the defendant's selective prosecution motion finding that D'Souza, "has presented no evidence that he was selectively prosecuted. The burden, at this motion stage, is some evidence. I determine that there is no evidence. There is no evidence of discriminatory effect nor of discriminatory purpose." (Transcript of May 15, 2014 Court Proceeding at 30-31, a copy of which is attached hereto as Exhibit D) .

Gov's ltr. at p. 8.

The Government would be best advised to read more carefully the transcirpt of the May 15th proceeding attached to its memorandum. It would be further advised to read the entirety of the transcript, specifically at pp. 21-41, whereupon the Court rendered its decision on *all* Defendant's motions.

To be sure, the Court rejected Defendant's selective prosecution claim. But that was not the only issue which Defendant, through his attorneys, had raised. Thus, noting that

"the papers that have been submitted here are excellent for one thing from both sides...," Tr. at 2, the Court initially proceeded to inquire of both sides with respect to those aspects of the motions which the Government chooses to overlook, including posing questions to the prosecutor with respect to Defendant's constitutional-based claims under *McCutcheon v. Fed. Election Com'n*, 134 S. Ct. 1434 (2014). *See* Tr. at pp. 2-9. It was only the "last question" the court posed which related to selective prosecution, *id.,* at pp. 9-11, following which the court entertained further comments on Defendant's far more elaborate motions. *Id.*, at pp. 12-13. Thereupon indicating that "[t]his Q and A has been very helpful as well[,]" *id.* at p. 15, the Court adjourned the proceeding until that afternoon, pending its decision.

Upon reconvening, the Court first noted, again, that it had "reviewed all of the submissions, which have been very thorough and excellently done." *Id.* at p. 17. Then, while rendering its decision, which ultimately denied all Defendant's motions, there was certainly no indication by the Court, as the Government now claims, that the issues raised were in any way frivolous or completely lacking in merit. Rather, while sustaining the charges, the Court painstakingly reviewed each of Defendant's arguments, explaining why it ultimately found them to be unpersuasive. Moreover, the Court thereupon devoted additional time to the anticipated charge on the element of "wilfulness," which certainly impacted on the viability, as a matter of law, of the charges, and regarding which the parties had been in dispute. *Id.,* at pp. 33-35.

All told, the Court certainly did not find Defendant's motion to be frivolous,

-13-

but rather deliberated over the issues with an obviously painstaking analysis. Once they were decided, Defendant pleaded *at the very next appearance*. Accordingly, contrary to the Government's claim that the timing of the plea was "not the hallmark of an individual who never considered contesting the underlying facts by his actions or 'most assuredly accepted responsibility for his criminal conduct,' (Def. Ltr. at 2)[,]" Gov's ltr. at p. 8, the fact remains that the only aspect of this case that was ever challenged was the constitutionality of the charging statute and its application to Defendant's uncontested state of mind. As was argued in our principal submission, once assured that the court would not accept the defense position as a matter of law,

> for purposes of a variant, non-guidelines sentence, we urge the Court to consider the fact that Mr. . D'Souza accepted responsibility for his conduct soon after all legal challenges were rejected. This, coupled with the heartfelt contrition that he has repeatedly stated to the Court, to counsel and to all those who know him best, should certainly enable your Honor to believe in his inherent goodness as a selfless human being.

Defendant's sentencing memorandum at p. 41.

The defendant's decision to plead guilty only after this Court rejected his pretrial motions was, under the facts of this unique case, certainly understandable. Also, in view of the Supreme Court's decision in McCutheon, it would have been irresponsible for experienced counsel to advise a plea in this case without first challenging the constitutionality of this prosecution.

III.  **In Every Public Statement Made since His Plea, the Defendant Has Consistently Maintained That He Was Guilty of the Crime He Pleaded Guilty to and That His Conduct Was Wrong.**

In this case, there is absolutely nothing wrong or inconsistent with Mr. D'Souza's maintaining that he is guilty of the crime he committed but also pointing out how much more seriously he is being treated than anybody else who has ever committed the same crime with the same facts, with no evidence whatsoever of any element of corruption.

Indeed, there is a substantial difference, on the one hand, between meeting the standard required in order to establish a "selective" prosecution, as the courts define that term, and on the other, with showing that a particular defendant is nevertheless being singled out for treatment that is more harsh than most everyone else who commits the same offense. Indeed, even the way the Government has urged a prison sentence in this case supports the unfortunate conclusion that, as far as the Government is concerned, this man should be sent to prison, not for what he did, but because he is Dinesh D'Souza.

Thus, as the record will reflect, this case was fast tracked for criminal prosecution in record time. The conduct may have been discovered in a routine audit as the Government maintains, but thereafter, nothing about this case was routine. Thus, despite the fact that the vast majority of similar cases are resolved as civil matters before the FEC, this case was referred for criminal prosecution. Despite the fact that the defendant in this case attempted to obtain a Deferred Prosecution or resolve his case with a Misdemeanor prosecution, this case was maintained at a Felony level, notwithstanding the small number

of Donors, the insignificant sum of money and the absence of any corruption.

Then in furtherance of pleading guilty prior to trial, the Government insisted on a plea that did not include a reduction for acceptance of responsibility, even though his plea was entered the next available court day following a very detailed decision by a court that spent a great deal of time resolving a series of complicated legal issues. Furthermore, in an effort to suggest that the court must impose a prison sentence because of an important parity issue, the Government now presents the Court with case after case that was in every important way substantially distinguishable from the case at hand.

We agree with your Honor that we did not meet the technical legal threshold of a selective prosecution in order to obtain a dismissal of the indictment. On the other hand, any objective view of this case, and of how the defendant has been treated by the government, suggests that he has a right to speak out on this issue. Indeed, his right is obviously *not* to deny his guilt, which he has never done since the beginning of this case, but simply to argue that his political views and his blistering attacks on the current administration have resulted in an angry government -- angry at him, not for what he has done, but because of who he is and that for which he stands.

We are comforted by the knowledge that, to date, everything this Court has done in this case has been fair. Even when we did not agree with a legal ruling by the Court, we could see a rationale legal basis to support the ruling. We respectfully submit that to imprison a 53 year old scholar with no criminal conduct for a non-violent offense for which

he has accepted responsibility would amount to a sentence far greater than necessary to promote justice and respect for the law.

Nonetheless, the Governments submits in this high-profile case for the world to see:

> Importantly, the defendant's public statements after his guilty plea also reflect his lack of acceptance of responsibility, belie his supposed "heartfelt" claims to the Court now that he has "profound contrition," (Def. Mem. at 2, 35), and undercut his claims that he has great "regard for the law," and is "eager [] to make amends." (Def. Mem. at 5) Following the defendant's guilty plea, in his public appearances and on his website, the defendant was not "ashamed" or "contrite" as he now writes to the Court. (Def. Mem. at 5). Instead, D'Souza continued to advance the selective prosecution argument soundly rejected by this Court and went so far as to suggest he lacked criminal intent, but was being unfairly blocked by a pretrial ruling by the Court from raising an intent defense. It is difficult to understand how the defendant's supposed acceptance of responsibility can be reconciled against (baseless) claims that he acted unintentionally. (See Ex. C (video and transcript of the defendant's appearance on a television news show the day of his guilty plea); Exhibit E hereto (printout of the defendant's website about his television appearance the day of his guilty plea) and Exhibit F hereto (video and transcript of the defendant's appearance on a television show two days after his guilty plea) .
>
> For example, during the defendant's television appearance two days after his plea, D'Souza repeatedly asserted that this case was about whether he was selectively prosecuted: "The case revolved really on . . . the issue of selective prosecution . . .[was I] being selectively or excessively prosecuted for something that normally doesn't get this kind of treatment." (Ex. F at 1- 2). The defendant made various other statements during that interview in which he portrayed himself as a victim of an "administration systemically us [ing] the government to prosecute its critics," lamented the "misuse of the judicial system," and claimed "we'll never know who decided to prosecute me and when." (Ex. F at 4). In this same interview, D'Souza further sought to minimize the nature of his crime and his criminal intent by, in essence, faulting the Court for his decision to plea: "Did I intend to commit a crime? Did I intend to break the law? What really changed in the case is that the Judge ruled that the selective prosecution issue could not be .... introduced in Court .. [and

the Court] defined intent in a quite narrow way that made it almost impossible for me to launch a defense based on that." (Ex. F). In sum, based on the defendant's own postplea statements, the Court should reject the defendant's claims of contrition on the eve of sentencing.

Gov's memo at pp. 8-9.

The Government looks at the forest but chooses only to view individual trees. The fact is that, even in the transcript provided, it is clear that Defendant, in public statements on the air, repeatedly acknowledged that his conduct had been "wrong."  For example, Defendant readily admitted in a television appearance:

> Interestingly, in the beginning, I didn't - I didn't exceed the limits, and now I'm saying the opposite; on the contrary. The facts of the case that I, you know, induced 2 of my close associates to contribute (I reimbursed them); I did do that. And actually, that was wrong. I should not***Yes, it's end around campaign finance laws. So I acknowledged responsibility, and I have - I did, I did admit doing that from the beginning. But I did, uh, con - contest the issue of selective prosecution - why was I being - so we made a motion before the Judge on selective prosecution. But in the ruling last week, he said, "No, you can't bring that into the case." So what really happened is I was going into a trial with in a sense, no defense...

Gov. Ex. C at p. 2,

To be sure, as a high profile and celebrated voice of the right, Defendant remains a public figure who obviously harbors strong political views with regard to the current administration. His comments, however, never detracted from or diminished his acceptance of *responsibility*. Rather, the comments were consistent with Defendant's position before the case ever began - namely, that the processes at work within the government are not correct.

There is, of course, nothing inconsistent about Defendant being admittedly wrong and misguided, yet believing at the same time that the manner in which the criminal system works is also wrong and misguided. If the question is whether or not Defendant accepts responsibility, the answer must be a resounding *yes*. If the question is whether or not Defendant honestly accepts the fact that all similarly situated individuals have been met with such government force, the answer is most certainly no and he is absolutely correct.

In this latter regard, merely because the Court found, as a matter of law, that Defendant had not met his burden of demonstrating that he had been the victim of a selective prosecution does not detract from Dinesh's good faith subjective view that he had indeed been singled out because of his political views. Although the former requires a threshold showing which this Court found had not been met, a ruling which we certainly respect and accept, the latter merely requires an honest, good faith belief that the facts are otherwise. *That is all that Defendant had articulated.* In the end, he still never deviated from his plea-based admission that he had knowingly violated the statute and had thereby acted wrongfully.

Simply stated, it is one thing to criticize the process. It is entirely another, to challenge the proof. Once the legal issues were resolved against him, Mr. D'Souza quickly decided not to do the latter and accept responsibility for his admittedly wrongful conduct. In the end, therefore, as demonstrated in the Government's own exhibits, the fact remains that Defendant never deviated from stating that his conduct had been wrong:

> My longtime friend Wendy Long - uh, I've known her for 30 years - and she was running for the Senate in New York. Uh, her campaign was absolutely

flailing, uh and I wanted to help her. And so I just chose the wrong and stupid way to do it. I shouldn't have done it. Uh, and I'm taking responsibility for it.

Gov. Ex C, at p. 3; *see also* Exhibit F, at p. 2.

<u>**Conclusion**</u>

**For All the Foregoing Reasons, As Well As Those Earlier Stated in Our Principal Submission, Dinesh D'souza Should Be Sentenced to Probation, with the Suggested Condition of Community Service**

Dated:       New York, New York
             September 15, 2014


                     Respectfully submitted,

                     **BRAFMAN & ASSOCIATES, P.C.**
                     *Attorneys for Defendant*
                     *Dinesh D'Souza*
                     767 Third Avenue, 26th Floor
                     New York, New York 10017
                     (212) 750-7800

             By:     _____
                     Benjamin Brafman (BB2285)

                     _____
                     Mark M. Baker (MB5365)

                     _____
                     Alex Spiro (AS6078)

-20-