UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA, New York, N.Y.

v. 14 CR 34(RMB)

DINESH D'SOUZA,

Defendant.

------------------------------x

October 15, 2014
10:42 a.m.

Before:

HON. RICHARD M. BERMAN,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
BY: CARRIE COHEN
PAUL KRIEGER
Assistant United States Attorneys

BENJAMIN BRAFMAN
ALEX SPIRO
Attorneys for Defendant

ALSO PRESENT: USPO Kathy Schwarte (via phone)
USPO Brett Halem

(In open court)

THE COURT: So we have I think on the phone Kathy Schwarte?

MS. SCHWARTE: Yes, your Honor. Good morning.

THE COURT: How are you?

MS. SCHWARTE: I'm good. Thank you.

How are you?

THE COURT: I'm well. Thank you.

So you are supervising Mr. D'souza in California?

MS. SCHWARTE: Correct.

THE COURT: So I have your supervision update report, status report, and wanted to go over some of the issues that I have flagged. Then I'm happy to hear from the government and the defense.

So, Ms. Schwarte, in your letter dated October 9, 2014, in the first paragraph you discuss community service. So do I understand from what you say there that there has been no actual community service teaching yet or what?

MS. SCHWARTE: No, your Honor. I just meant that he was actually able to do his first real community service work, and he did complete eight hours.

THE COURT: So that was of this week?

MS. SCHWARTE: Correct, your Honor, on October 13th.

THE COURT: Okay. And that was where?

MS. SCHWARTE: That was at two different -- I'm sorry.

One Catholic church, Latter Day Catholic High School and St. Jude Catholic church. They had ESL programs for immigrants that the court had ordered.

THE COURT: And so is that going to be the continuing schedule, Mondays, four hours and four hours?

MS. SCHWARTE: I believe he provided me an update yesterday, but I think he will do all of his hours at St. Jude Catholic church on Mondays and Wednesday mornings.

MR. BRAFMAN: Your Honor, may I help?

THE COURT: Let me first do that, and then we'll hear from you.

So I'm glad that it seems to be in the works, but I'm looking for a little regularity. And I also, as we always do with community service, I'm looking for the location to provide say a monthly log of hours of community service. So we would look for St. Jude's Catholic church and also the Catholic school on a monthly basis to indicate the hours and the dates that Mr. D'souza was performing community service.

MS. SCHWARTE: Okay, your Honor. I don't think that will be a problem. They've been very responsive so far.

THE COURT: It usually is not. It's usually pro forma.

Then there's a mention here of a proposal -- I don't know if that's still in the works. Mr. Brafman, you're indicating no?

MR. BRAFMAN: Your Honor, we were trying very hard to find a way to comply with the Court's order. As I explained to the government, you can't just show up with a school and say, I'm a convicted felon, I want to teach here. Ms. Schwarte was very helpful in finding a place that would accept the program, keep records, and it's all going to be done at the Latter Day Catholic school.

The other items was suggestions we were making in case this didn't work out. Also, just so your Honor is clear, the order requires eight hours a day, one day a week. The program that they run is four hours on Monday and four hours on Wednesday, because the people in the class need to go to work. So they can't --

THE COURT: That's fine. That will be fine.

And by the way, maybe I didn't convey it yet. It is typically -- and in this case it seems to be happening -- probation is instrumental in all aspects of the sentence. So it wasn't the burden on Mr. D'souza to find the place or, you know, in conjunction with probation. Probation has a lot of experience in perhaps not this exact form but in community service in general.

MR. BRAFMAN: And probation has been outstanding in terms of trying to get this done, and it would not have happened without Ms. Schwarte's intervention.

THE COURT: Right. So that's great. And just so it's

clear, now it is, that this proposal is just that, a proposal, I'm interested in English language, not citizenship, or just I want to get his help in teaching people how to speak English.

MR. BRAFMAN: The two classes that he is teaching involve adult immigrants who teach, who need English language, and he teaches it with a coteacher, because that's the way they do it. But he is the principal instructor, and it's four days, one day, a Monday and four days -- four hours Monday and four hours on Wednesday.

THE COURT: That will be fine. Ms. Schwarte, that's just fine with me.

MS. SCHWARTE: Okay. Excellent.

THE COURT: And then for recordkeeping, it would be simpler because it's only one agency that we're dealing with.

MS. SCHWARTE: Correct. Okay.

THE COURT: Okay. Then moving on to Dr. Marshal for counseling sessions, that seems to be in order?

MS. SCHWARTE: Yes, your Honor. She was very communicative. She is pleased to be working with him and says he seems very amenable to the process at this point.

THE COURT: Right. So let me ask this: It's come up in most other situations where I've directed that there be therapeutic counseling. There's usually a -- for want of a better phrase, a psych evaluation at the beginning typically by a psychiatrist, just to make a preliminary determination as to

if there are any suggestions for medication or suggestions for a course of treatment, of therapy. I take it you have not done that? That hasn't happened?

MS. SCHWARTE: That has not happened, your Honor. I apologize. I wasn't clear that that was what the Court desired, but we can arrange that through our contract services; or if they'd rather do that through some insurance, that's fine with me, if that's okay with the Court.

THE COURT: I was unclear, too, in -- I didn't delineate that. And then the therapeutic counseling, I think my order speaks about therapeutic counseling, but that would be helpful. I think that is the way I typically start. And a psychiatrist might identify something or not, but would then -- could then say weekly sessions with Dr. Marshal would be okay or fine or whatever.

So, yes, I would appreciate if you would schedule that, working with Mr. D'souza, his insurance, etc., or the person that you would normally do that with.

MS. SCHWARTE: Yes, your Honor.

THE COURT: And so I see that the community confinement center began October 2, is that right?

MS. SCHWARTE: Correct.

THE COURT: And I got a letter from Mr. Cazares, who generously referred to me as Judge Moynihan, Daniel Patrick Moynihan, for which I'm flattered, but of course -- anyway,

so --

MR. BRAFMAN: Your Honor, I have the corrected letter addressed to you, sir, with your proper name.

THE COURT: That's all right.

MR. BRAFMAN: I think he was referring to the name of the courthouse.

THE COURT: I'm sure he was. I'm sure he was. I'm sure he was.

So has he -- Mr. D'souza I assume is there, has been there daily since October 2, is that right, Ms. Schwarte?

MS. SCHWARTE: He has been there. Your Honor, when Mr. D'souza checked in to the facility, he had a lot of pending travel arrangements. And one of those travel arrangements actually did come to fruition. Submitted it, Bureau of Prisons was prepared to deny all travel until we had a more specific order from the Court, but once -- he had once overnight travel to I believe it was South Dakota for a work-related event. Otherwise, he's been there every -- there's been no concerns except for the pending trial, that I'd like to address when your Honor is ready.

THE COURT: So I can turn to that now. It's in the second-to-last paragraph of your letter on page 2, and it is not my intention that there be overnight travel.

MR. BRAFMAN: We're not pressing that now. We've discussed it. We've told the government we're not pressing it,

and we withdraw the request at this time.

THE COURT: Okay. You heard that, Ms. Schwarte?

MS. SCHWARTE: I did. And that will make things a lot simpler.

Your Honor, one other issue on that, a couple things on Mr. D'souza's itinerary are travel that can be done during the day and he can return that evening. For example, to travel from San Diego to Santa Barbara is about a three- to four-hour drive. Now, if he leaves our district, the Bureau of Prisons will check him out. So that's a little bit of a logistical issue as well. Restrict the travel to our district, which is San Diego County and Imperial County and not even allow travel that would cause the Bureau of Prisons to check him out for the day.

THE COURT: I think that would be better, actually, not to check him out for the day, because it's going to create all kinds of -- well, it's going to create issues as to whether he's in compliance, etc.

MS. SCHWARTE: Right.

THE COURT: I think we should -- it's a big town down there, so there's plenty to do. I would restrict the travel, yes.

MS. SCHWARTE: Okay. Thank you for that clarification.

THE COURT: And you indicate that he's paid the fine

and the special assessment in full as of October 3, 2014. That's very positive, is that right?

MR. BRAFMAN: Your Honor, I have the documentation in court with the official receipt from the courthouse for the fine and the special assessment. He's also paid the cost of his confinement. We might have a copy of a cashier's check and the receipt for the first month for $3,053. So in terms of the monetary penalties, he is in full compliance, your Honor.

THE COURT: And Ms. Schwarte indicates that in her letter as well.

And then the last item is your number five, Ms. Schwarte, that you reviewed with him the judgment and conviction. And he, Mr. D'souza, is aware of his obligations and responsibilities.

MS. SCHWARTE: Very much so, your Honor.

THE COURT: Okay. So did you have any further questions of me, Ms. Schwarte, or did we answer all your questions?

MS. SCHWARTE: Yeah, you did, your Honor. Thank you.

THE COURT: So now I'll turn to the government, if they wish to add anything, and the defense, if Mr. D'souza may wish to add anything, or Mr. Brafman.

MS. COHEN: The government has nothing to add, your Honor.

MR. BRAFMAN: Judge, I just want to clarify something

so the Court should have no concern.

I've obviously very carefully tracked any order that this Court sends out, discussed them with D'souza. And perhaps better than anyone in this city for the last several weeks, I'm familiar with when a tabloid decides to write something, regardless of whether there's any basis in fact to do so. Mr. D'souza had never discussed the possibility of filming his confinement or his treatment or his teaching. A reporter came up to him and simply said that on social media, there is a suggestion that you make a film about your community service, teaching English to immigrants. It would be interesting. He said, thank you very much but I'm not interested. That created a story, which then created some concern on the part of the Court.

I assure you, sir, and Mr. D'souza assures you, he understands the restrictions. He's complying to the best of his ability. And probation has been very helpful in getting this organized. And now that we are organized, I don't think there will be any more glitches for the period that he's under supervision.

THE COURT: I appreciate that. And you understand, I know you do, that -- so my feeling about probation or supervised release or whatever the regime is, that the persons involved in this case, Mr. D'souza, are most successful when they dig into the program itself, so to speak, and not be

distracted by any peripherals. So I appreciate that, from what you're saying, that he is of that view as well, and you are also. That was my concern I expressed in an order.

MR. BRAFMAN: Yes. And Mr. D'souza had asked me to say to you, sir, that he very much appreciates the discretion your Honor had and showed him and the courtesy extended by avoiding a prison sentence. He does not want to do anything to disappoint you and any of the delays in -- for getting these programs were beyond his control. There are just certain technical issues that have to be dealt with when you try and start teaching or you start counseling or you start community confinement center.

THE COURT: So that's I think to be expected, and so I have no concerns at this point.

So, Mr. D'souza, how is the language teaching so far? It's preliminary, but how is it?

THE DEFENDANT: Honestly, I didn't know what to expect. I like it very much. These are immigrants who are very poor and they really want to learn. I'm teaching both introductory, intermediate and advanced, so three different levels. And each class is typically two hours. And I work with a teacher who knows Spanish, so that's the one missing element for me. So I'm thrilled to be doing it.

THE COURT: Great. So that sound great.

MS. SCHWARTE: Your Honor --

THE COURT: Yes, ma'am.

MS. SCHWARTE: I'm sorry to interrupt. I did want to go back to the media coverage for a moment, if we could, because Mr. D'souza has entertained numerous requests for interviews related maybe in some part to the case, but also to the release of his video this month, and trying to publicize that in a work-related way.

The Bureau of Prisons normally wants to approve, review and approve all media requests for anyone that's in one of their facilities. Because they anticipate it being so much, they have decided to do news on that and defer everything to my judgment. I don't feel it's within my right to restrict any speaking to the media. Of course I just encouraged him to be very factual and not inflammatory when it comes to the Court, which of course I'm sure he would not, but I just wanted to run that by your Honor to see if you had any concerns at all about that.

THE COURT: So I'm content to leave it with you. If you do have concerns, we can revisit it. Is that satisfactory to you?

MS. SCHWARTE: Absolutely. Thank you.

THE COURT: In talking about revisiting, most of you -- you may not, Ms. Schwarte, but in any event, it's my practice in supervision and in probation to have periodic status reports, just to see how things are going, which I plan

to do here and will give you a date in a moment.

Mr. Brafman, because Mr. D'souza is in California, as long as things are going well, if you wish to waive his appearance, that's fine with me. You don't really need to bring him for regular status meetings. I think you would have the information and the government would have the information and we'll have Ms. Schwarte on the phone. It's only if there's some sort of issue or problem that comes up that we might say we would like to see Mr. D'souza in New York. So as long as it's convenient with your schedule, Mr. Brafman, and the government's and mine, we won't need Mr. D'souza, for example, at the next session.

MR. BRAFMAN: Thank you. I would, and he would, acknowledge wanting to waive his appearance, unless directed by the Court, because not only is the travel expensive, it's also disruptive in the treatment and the teaching, and also in gaining credit for the time he is serving in the community confinement center.

THE COURT: Correct.

MR. BRAFMAN: Thank you.

THE COURT: So let me give you a date for -- so I'm going to propose, at least for the first one, Monday, November 24, if you're available, at 11:30.

MS. COHEN: Fine with the government, your Honor.

MR. BRAFMAN: That's fine, your Honor.

THE COURT: Ms. Schwarte, would that work for you?

MS. SCHWARTE: Absolutely, your Honor.

THE COURT: This works fine, by the way, having you on the phone.

So, as we've said, we'll waive Mr. D'souza's appearance here in New York for the November 24, 2014, conference, all right? Anybody want to raise anything else?

MR. BRAFMAN: Just one point of clarification.

Mr. D'souza has no intention of doing any media about his case, any media about his community service, about his teaching. There are requests, because of a book he has written in which he is contractually obligated to essentially help promote and endorse, and I think he should be perfectly entitled to be interviewed during the day when he's out, not in the facility, on normal business related matters. Is that your understanding, your Honor?

THE COURT: That's my feeling. He can run it by Ms. Schwarte so she's in the loop in each instance.

But, Ms. Schwarte, does that work for you?

MS. SCHWARTE: Absolutely. The Bureau of Prisons has asked for a currency advisement. So I have certain issues about providing, maybe on a weekly basis, as far as what he's anticipating as far as media interviews, but I have no problem approving them.

THE COURT: As Mr. Brafman said, it would be not on a

government facility, it would be -- yeah.

MR. BRAFMAN: And not at the teaching facility.

THE COURT: And not at the teaching facility either.

MR. BRAFMAN: And Ms. Schwarte will be given substantial notice in advance.

THE COURT: That's great. All right.

So I think that concludes our work for today. It's nice to see you all.

MR. BRAFMAN: Thank you very much.

MS. COHEN: Thank you, your Honor.

(Adjourned)